## WABASH SCREEN DOOR CO. v. BLACK.

(Circuit Court of Appeals, Sixth Circuit. December 8, 1903.)

No. 1,204.

1. INJURY TO SERVANT—DEFECTIVE MACHINERY—QUESTIONS FOR JURY.

In an action for the death of an employé alleged to have been caused by the bursting of a defective wooden pulley constructed by defendant, where the pieces of the pulley were in evidence, and experts testified therefrom to its improper construction, pointing out its defects and weaknesses, and there was no evidence that such pulleys were used by others, the questions whether the pulley was defective and whether defendant was guilty of negligence in using it were properly submitted to the jury.

2. SAME—MANNER OF INJURY—PROVINCE OF JURY TO DETERMINE.

In the absence of direct evidence as to the manner in which a servant was killed, in an action for his death, while the jury should not be per-

126 F.—46

mitted to speculate, in the sense of guess, between different causes, the mere suggestion of theories by the defense which may have no reasonable foundation in the evidence does not reduce the matter to one of speculation, and disqualify the jury from determining the cause, where there is evidence which, although circumstantial, gives reasonable support to the allegations of plaintiff.

**8. SAME.**

Plaintiff's intestate was an oiler in defendant's manufacturing plant. While at work in a room containing shafting a large wooden pulley burst, the pieces flying in different directions, and the deceased was found on the floor near the shaft, with one side of his skull crushed in, and a scalp wound on the other, and fatally injured. There was no direct testimony as to the manner of his injury, which plaintiff alleged was caused by his being struck by a piece of the broken pulley. Held, that there was sufficient evidence to warrant the submission of the question to the jury under proper instructions as to the burden and measure of proof.

**4. WITNESSES—CROSS-EXAMINATION—SHOWING RELATION OF WITNESS TO CASE.**

Where, in an action against a master for the death of a servant, defendant introduced as expert witnesses two physicians who attended the deceased after his injury, and brought out the fact that one of such physicians was sent for by defendant on the recommendation of a third person, it was competent for plaintiff to show, on cross-examination, that such person was the agent of an insurance company which had insured defendant against liability for accidents, and that the physician went at his request and under employment by the company, such evidence being proper to explain the relation of the witness to the case.

**5. WRONGFUL DEATH—TENNESSEE STATUTE—EVIDENCE.**

Under a declaration in an action for wrongful death containing allegations based on the Tennessee statute (Shannon's Code, § 4029), which permits a recovery for the mental and physical suffering resulting to the deceased from the injury causing his death, it is competent to show the circumstances relating to the condition and treatment of the deceased from the time of the injury until his death.

**6. MASTER AND SERVANT—DEFECTIVE MACHINERY—EVIDENCE OF NEGLIGENCE.**

On an issue as to the negligence of defendant in using a defective pulley constructed by its employés, it was competent to show that two other pulleys previously used by it, and constructed by the same employés and in the same manner, had burst, and that it had knowledge of such facts.

**7. APPEAL—OBJECTION TO FORM OF QUESTION—WAIVER.**

The objection that a question asked an expert witness was too meager in its statement of facts cannot be raised for the first time in an appellate court.

**8. EVIDENCE—EXPERT TESTIMONY—OPINION AS TO SAFETY OF MACHINERY.**

On an issue as to the negligence of a defendant in using a certain pulley, an expert may properly state his opinion as to whether a pulley constructed like the one in question was safe or unsafe for the purpose for which it was being used.

In Error to the Circuit Court of the United States for the Western District of Tennessee.

H. R. Boyd, for plaintiff in error.

Walter Malone, for defendant in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

RICHARDS, Circuit Judge. This was an action to recover damages for the negligent killing of Milton E. Whitford. It was brought under the Tennessee statute in the local court by the administratrix, and removed on the application of the Wabash Screen Door Company, the defendant below, to the United States Circuit Court for the

Western District of Tennessee. The trial judge refusing to direct a verdict for the defendant, the case went to the jury, and a verdict and judgment was recovered, which the court below declined to disturb.

At the time of the accident which resulted in his death Milton E. Whitford was an oiler in the plant of the Wabash Screen Door Company, in Memphis. He was a young man, 20 years old, and had been employed for only about a month. In the basement of the plant there was a system of line and counter shafts carrying pulleys of different sizes, which, by means of belts, operated machines located upon the floors above. In oiling the machinery Whitford was required to pass along one of the shafts and near a certain wood split pulley, which had been made by the company and had been in operation some 75 days. When Whitford was in the vicinity of this pulley, it burst, flying into three pieces, and immediately afterwards he was found lying on the floor close to the line shaft, unconscious, with his skull fractured on one side and his scalp bruised on the other. Physicians were at once summoned by the company, and the young man removed to the city hospital, where a trephining operation was performed. He never recovered consciousness, and died within two days.

The case has been brought here for review, and the assignments of error go to the refusal of the court to take the case from the jury, and to the admission of certain testimony, coupled with certain charges touching the same.

1. It is urged the court erred in submitting the case to the jury, because, in the first place, there was no evidence of negligence on the part of the company; and, in the second place, if there was, no connection was shown by the proof between such negligence and the death of Whitford; that, there being no eyewitness to the accident, the jury should not have been permitted to speculate as to what caused the injury which resulted in his death.

The pulley was made by the company. The plaintiff below contended that the work of construction was improperly and negligently done, that the pulley was defective, that it burst of its own weakness, and that Whitford, without fault on his part and while in the discharge of his duty, was struck by one of the flying pieces and fatally injured. The jury found in favor of this contention. Now the company insists that the proof fails to show that the pulley was defective; but, if it does, it fails to show the specific defect which caused it to burst; and, if it does this, still it does not show that Whitford was struck by one of the flying pieces, for no one saw him hit; that, for aught that appears in the record, he might have been hurt by stumbling and falling into the pulley while approaching it, or by slipping and falling between the belt and pulley while oiling the idler above, in either of which events his skull might have been fractured on one side and his scalp bruised on the other.

The pulley was made by one Pingree, under the supervision of Brown, the superintendent of the factory, who was a witness in the case. It was a wood split pulley 42 inches in diameter, with a rim 6 inches wide and 2⅝ inches thick, made of poplar cants, nailed and glued together, into which was set, by a plain dovetail about ¾ of

an inch deep, two oak arms. The pulley was made in two segments, each composed of an arm and a half of the rim, which were clamped together and to the shaft by means of bolts running through the arms.

The testimony of the plaintiff, including that of three expert witnesses, tended to show that the pulley was defective because it had only two arms, because the pieces of wood which composed the rim were not properly nailed and glued together, and because the connection between the arms and the rim by a plain dovetail of the depth mentioned was too weak. The pieces which once constituted the pulley were in evidence before the jury, and one of the experts pointed out to the jury how these pieces spoke for themselves respecting the structural defects of the pulley.

No expert was introduced by the company to testify that the pulley was properly constructed, or that similar pulleys were used elsewhere. Brown, the superintendent, was unable to point to any such pulley in operation elsewhere, except one he had made five or six years before for a factory in Michigan. Under the circumstances, we think the court below was right in submitting to the jury, under proper instructions, the question whether the pulley was defective and the company guilty of negligence in using it. So much for the pulley.

Now as to how Whitford was hurt. No one saw him struck down. The witness Johnson heard the pulley burst, and saw two pieces of the rim flying in opposite directions, one striking the ceiling and the other the floor. A third piece was found about four feet from the shaft. There was no wound or bruise on Whitford's body except those on the head, and his clothing was not torn. As to the injury on the head, eight witnesses for the plaintiff testified that he was wounded only on one side, while the two physicians called by the company testified there was a fracture on one side and a scalp wound on the other. One of the physicians, describing the fracture, used this language: "Gentlemen, this is about where the blow was—that is, the force of the blow that penetrated the skull, knocking the skull in. The fracture radiated upward towards the eye, and downward and backward towards the base of the skull."

Such being in general the nature of the evidence, the court left it to the jury to determine whether the injury was the direct result of the breaking of the pulley, instructing them that the burden was upon the plaintiff to establish this fact, and, if they were not satisfied from the preponderance of the proof that the injury was so caused, they must find for the defendant. If it came from some mysterious cause, which they did not understand from the proof, or could not explain by the proof, then the plaintiff could not recover, no matter what the cause was. The jury was warned that the fact of accident carried with it no presumption of negligence. That was an affirmative fact, to be established by the plaintiff. Where the testimony left the matter uncertain, and showed that any one of a half dozen things may have brought about the injury, it was not for the jury to guess between these causes, and find that the negligence of the employer was the real cause, when there was no satisfactory foundation in the testimony for that conclusion. Respecting the theories advanced by the company, the court said:

"Their contention is that he slipped and fell, and in some way had his skull squeezed between the band and the pulley. It was even suggested that the contact of the hard substance of his skull between the band and pulley furnished the extra force that broke this pulley, which was otherwise sufficient for the work that it did, or that some oil can got in it, or some force of the idler was upon it, or he got in between the idler and the band, or some other way that was suggested by counsel. If that is a fair and reasonable inference from the proof, * * * the defendant company would not be liable. They are not liable unless the defect in the pulley caused the death, no matter how else it was caused, as I have told you heretofore."

While the evidence was circumstantial, it was ample, in our opinion, to warrant the submission of the question to the jury under the instructions given. R. R. Co. v. McDade, 112 Fed. 888, 50 C. C. A. 591; 191 U. S. 64, 24 Sup. Ct. 24, 48 L. Ed. ——. Doubtless a jury ought not to be permitted to speculate, in the sense of guess, between causes, when no reasonable explanation of the injury can be found in the testimony. Patton v. Texas Pac. Ry. Co., 179 U. S. 658, 21 Sup. Ct. 275, 45 L. Ed. 361; Duntley v. Inman & Co. (Or.) 70 Pac. 529, 59 L. R. A. 785; I. C. R. R. Co. v. Cathey, 70 Miss. 332, 12 South. 253; and other cases. But, in the absence of direct testimony, the simple suggestion of theories by the defense does not reduce the jury to mere speculation, and disqualify it from determining the cause of the injury complained of. The theories suggested may be forced and fanciful, finding no reasonable foundation in the facts proved. They may be explanations which do not explain; which the common sense of the jury, when applied to the testimony, would instantly reject.

2. The physicians who attended young Whitford and performed the operation were Drs. Wadlington and Burns. Furniss, superintendent of the factory, testified that, knowing Wadlington, he telephoned for him at once. After he came, and it appeared the boy was badly hurt, Furniss telephoned a Mr. Collier, who recommended Dr. Burns. On cross-examination Furniss was asked whether Mr. Collier did not represent an insurance company which had bonded his company for $5,000 against accidents. This question was objected to on the ground that "the amount of the policy was immaterial; that it had nothing to do with the credibility of any witness." The witness answered that the company had such a policy, but he could not say as to the amount.

Dr. Burns, who testified for the defense, said he was called to the city hospital to attend Whitford. He described what was done and the nature of the wounds. On cross-examination he was permitted to state that he was asked to go out to the hospital by the Standard Accident Insurance Company, and C. M. Collier was its agent. He stated further that he had done work for this insurance company before; that he was one of its regular doctors.

It is now urged that this was error, and cases are cited in which it was held that the fact that a manufacturing company carried insurance to protect itself against loss from accidents to its employés was not admissible in an action against the company for negligence. Conceding this to be the rule, the doctrine does not apply here. The plaintiff did not seek to introduce the fact that the defendant was carrying employers' liability insurance. The matter was brought out

upon cross-examination, and properly and necessarily brought out. Mr. Furniss testified that he had telephoned Mr. Collier to send a physician to assist Dr. Wadlington, and Dr. Burns was recommended. Dr. Burns stated that he was employed through Mr. Collier by the insurance company to go to the city hospital in Whitford's case. The defense having thus brought Mr. Collier into the case, counsel for plaintiff had the right to ask, and the jury were entitled to know, who Mr. Collier was, and how this insurance company came to send Dr. Burns to the city hospital, as reflecting upon the precise position Dr. Burns occupied both as a physician and as a witness. Both Dr. Burns and Doctor Wadlington testified as experts when describing the nature of the wounds and the manner in which they might have been inflicted. That they had been employed and paid, one by the defendant company, and the other by the Standard Accident Insurance Company, which had insured it, was certainly a thing to be known and considered by the jury in estimating the weight to be given to their testimony. 1 Wharton, Ev. § 456; Rogers, Ex. Test. § 37.

3. The statute of Tennessee provides that in an action for wrongful death the parties suing shall have the right to recover for the mental and physical suffering, loss of time, and necessary expenses resulting to the deceased from the personal injuries. Shannon's Code, § 4029. The declaration, in order to avail itself of this provision, alleged that immediately after Whitford was hurt his mother came to the factory, and begged to be allowed to take him home for treatment by her family physician; but the company's agents treated her request with derision, and sent her boy to the city hospital, where he was attended by strange physicians selected by the company, and where he died away from home and without the consolation of her presence, and that because of these things his last hours were made more painful and less endurable to him.

No effort was made by the defense to eliminate these averments from the declaration, and upon the trial the court permitted testimony to go to the jury which tended to show that the boy was sent to the hospital by the company without the consent of his mother, but struck out all testimony tending to show that the superintendent and the physician acted in an offensive manner towards the mother. At the same time, while admitting the testimony explanatory of how the boy happened to be sent to the hospital, the court instructed the jury that the case was not one for punitive damages, and that the evidence as to the conduct of the doctors was to be used only in estimating the weight to be given to their testimony.

We find no error in this. Under the circumstances, the whole history of the case, from the time the boy was hurt until he died, was material. The issues raised by the pleadings could not be intelligently determined without a knowledge of all that happened to the young man from the time he was injured until he died. It was necessary for the defense, in introducing its testimony, to cover this period, and show not only how the boy happened to be sent to the hospital, but all that was done to him after he got there. Obviously, it was permissible to the plaintiff to do the same thing.

4. The witness Ward, who preceded Whitford as oiler at the factory of the company, was permitted to testify that two wood split pulleys similar in construction to the one involved in this case, and made by the same persons, had burst while in operation, and that the company knew of it. It is urged the court erred in permitting this testimony to go to the jury; that evidence of other accidents in the factory was not permissible to prove negligence in the accident under investigation. But this testimony was introduced for a particular purpose. The declaration alleged that the pulley which burst and injured Whitford was made by employés of the company who were not competent, and the company knew they were not competent. How could the knowledge of their incompetency be brought home to the company in a more direct way than by the previous bursting of pulleys made by them in just the way this pulley was made? It was for this purpose the testimony was allowed to go in, and not for the purpose of proving other acts of negligence. Thus, in the case of the District of Columbia v. Armes, 107 U. S. 519, 2 Sup. Ct. 840, 27 L. Ed. 618, a suit against a municipality for injuries caused by a defective sidewalk, evidence of other accidents there was permitted in order to show the sidewalk was defective and the city knew it. See, also, Railway Co. v. Netolicky, 67 Fed. 673, 14 C. C. A. 615, and Patton v. Railway Co., 82 Fed. 980, 27 C. C. A. 287.

5. The same witness, Ward, who had had some 12 years' experience about machinery, and had been employed in six or seven factories, was examined as an expert, and asked to state whether a 42-inch pulley made of wood with only two arms was safe or unsafe. This question was objected to on the ground that it was one for the jury to answer. Now it is insisted it was too meager and did not sufficiently identify the pulley in controversy. But the question was not objectionable on the ground given the trial judge. If the present objection had been made then, the trial judge might have required the question to be made more specific. It is too late to make the objection now. Ward's competency as an expert is objected to, but we are not disposed to disturb the ruling of the trial judge on that point, and as to the weight to be given to Ward's testimony, that was a question for the jury. Union Insurance Co. v. Smith, 124 U. S. 400, 423, 8 Sup. Ct. 534, 31 L. Ed. 497, and cases cited.

Error is also assigned to the admission of the testimony of Weatherford, one of the experts, with respect to whether a pulley similar to that which burst was safe or not. The question was first objected to upon the ground that it did not state the sort of material that the saw run by the pulley was cutting. This omission was supplied, and then the witness, answering the question which described in some detail the pulley, stated he did not consider it safe. It is now urged that by expressing this opinion the witness invaded the province of the jury, and we are referred to the case of Bruce v. Beall, 99 Tenn. 303, 41 S. W. 445. In that case the company was sued for an accident caused by the breaking of an elevator cable which had been in use for some 13 years. An expert testified that the life of such a cable is limited to 6 or 7 years, and was then permitted, over the objection of the defendant, to state that in his opinion it would not be prudent

to keep such a cable running longer than 6 or 7 years. The Supreme Court of Tennessee pointed out in the case of Camp v. Ristine, 101 Tenn. 534, 47 S. W. 1098, that the answer to the first question was entirely competent. It was proper for the expert to testify that the life of the cable was limited to 6 or 7 years, but he was improperly allowed to go on and usurp the function of the jury by saying that it was not prudent—that is, it was negligent—for the company to use the cable more than 6 or 7 years. That was the very question the jury was to decide. Now, in the present case, Weatherford was not asked to testify whether it was prudent for the company to use the pulley. It was for the jury to say whether the company was negligent or not in using the pulley. But it was necessary for the jury to know whether the pulley used was safe or unsafe, suitable or defective. If it was safe it was not defective, and if it was defective it was not safe. Weatherford was permitted to testify that the pulley described to him in the question would, in his opinion, be unsafe—that is, defective—and he gave in detail the reasons for his opinion, pointing out wherein such a pulley would be inherently weak and liable to fly in pieces. Now, that was peculiarly a question for an expert. The strength of materials, when combined in a piece of machinery operating in a certain way, is a thing not open to common knowledge, but requires special skill, experience, and investigation to estimate. Weatherford had qualified as an expert, and what he said came properly within the range of expert testimony.

This covers, we think, the assignments of error which merit particular discussion. Perceiving no error in the record, the judgment of the Circuit Court is affirmed.