FEARINGTON v. TOBACCO CO.

(Filed April 10, 1906).

*Master and Servant—Duty of Master—Appliances—Evidence—Negligence—Res Ipsa Loquitur—Elevator.*

1.  An employer of labor to assist in the operation of railways, mills and other plants, when the machinery is more or less. complicated, and more especially when driven by mechanical power, is required to provide for his employees a reasonably safe place to work and to supply them with machinery, implements and appliances reasonably safe and suitable for the work in which they are engaged, and such as are approved and in general use in plants and places of like kind and character, and he is also required to keep such machinery in such condition, as far as this can be done, in the exercise of proper care and diligence.

2.  In an action to recover damages for personal injuries, where there was evidence that plaintiff, an inexperienced hand, was ordered to help truck the tobacco up stairs; that the tobacco was first put on a truck and then pulled on the elevator, the tobacco being piled as high as plaintiff's head; that there were no blocks on the wheels of the truck; that plaintiff stood behind the truck. between the truck and the side of the elevator floor, about 12 or 14 inches of space; that as the elevator was going up, it dropped several inches and the truck slipped and plaintiff was injured, *held,* there was evidence tending to show a negligent breach of duty on the part of the defendant.

3.  Under the doctrine of *res ipsa loquitur* there was evidence to be considered by the jury as to the negligent and defective condition of the elevator.

ACTION by Arthur Fearington, by his next friend, against the Blackwell Durham Tobacco Company, heard by *Judge T. J. Shaw* and a jury, at the October Term, 1905, of the Superior Court of DURHAM.

The plaintiff on his examination in chief testified as follows: "I was injured sometime in June, 1903; had been at work in the defendant's factory three days before the in-

jury, working in the shipping room helping to load cases of tobacco in a box car which stayed on the sidetrack in a few feet of the shipping room. In the evening, Mr. Andrews, superintendent of the defendant, came to me and told me to go up town and get him some tobacco; when I came up with the tobacco he said, 'Go in and help those fellows truck that tobacco upstairs.' I told him that I had never worked on an elevator. He said, 'Hell, you don't want to work, do you?' And I said, 'I don't want to work like that.' He turned and went off and I went to work where he told me. The first load I carried up with Thomas Fleming, second with Howard Smith, and got half way up the building; the tobacco was put on the truck and then pulled on the elevator; it was in sacks laid across the truck; the truck had wheels and was rolled on the elevator; the tobacco was piled on the truck about as high as my head; I could not look over it; I stood behind the truck, between the truck and the side of the elevator floor; about 12 or 14 inches space was between where I had to stand. (Illustrates the position of his feet, his right foot being slightly in advance of the left). I had one hand resting on the tobacco sacks; as the elevator was going up I was looking straight up, and the elevator dropped several inches; something gave me a knock on the left leg and I heard the bone break and my right leg shot out behind me; I fell with my face on the truck and right foot out behind me, and caught the iron rod with my left arm. When the elevator dropped the truck did nothing except to slip to me; there were no blocks on the wheels of the truck—ran it right on and left it so; there were no blocks there to put under the truck. They had me upstairs when I remembered anything, and was then carried to the Lincoln Hospital, suffering intensely; it seemed like I had as soon been dead as living. My right foot was broken in two; heel string in foot pulled loose; left leg broken just above the knee. There is a knot on my right side where I fell up

against the truck or something else. I left the hospital in about four weeks; was out something like two weeks and then went back and stayed nearly one month. My right foot is stiff and I limp as I walk. Drs. Manning and Carr attended me at the hospital. Dr. Carr is now dead. I suffered all the time I was at the hospital; my left leg gave me a lot of trouble, and pain in my side under my arm; it was nearly a year before I could walk without a crutch. Before I was hurt I was getting $6.25. Since I have gotten out of the hospital I have not been able to do regular work from morning to night. I now stay in a restaurant, but do not do regular work." There was other testimony tending to corroborate the plaintiff's statement. Among other witnesses, Charles Fleming testified, "There were ten sacks of tobacco on the truck, each weighing about 150 pounds."

At the close of the plaintiff's evidence the defendant moved to nonsuit the plaintiff, and on an intimation from His Honor that he would allow the motion, the plaintiff excepted, submitted to a nonsuit and appealed.

*Manning & Foushee* for the plaintiff.
*Fuller & Fuller* for the defendant.

*Per Curiam:* In *Hicks v. Mfg. Company,* 138 N. C., 325, it is said to be accepted law that an employer of labor to assist in the operation of railways, mills and other plants, when the machinery is more or less complicated, and more especially when driven by mechanical power, is required to provide for his employees in the exercise of proper care a reasonably safe place to work and to supply them with machinery, implements and appliances reasonably safe and suitable for the work in which they are engaged, and such as are approved and in general use in plants and places of like kind and character. And an employer is also required to keep such machinery in such condition, as far as this can

be done, in the exercise of proper care and diligence, citing *Witsell v. Railway,* 120 N. C., 557, and *Marks v. Cotton Mills,* 135 N. C., 287.

Applying these principles to the facts testified to by plaintiff, there was sufficient evidence tending to show a negligent breach of duty on the part of the defendant.

Under the doctrine of *res ipsa loquitur* there was evidence to be considered by the jury as to the negligent and defective condition of the elevator. *Womble v. Grocery Co.,* 135 N. C., 474; *Ross v. Cotton Mills,* 140 N. C., 115.

Again, there was evidence to show a negligent placing of the truck on the elevator without any appliance or contrivance to hold it in position; and further, there was testimony to be considered tending to show a negligent order on the part of the foreman in directing an inexperienced hand to go on an elevator, under all the circumstances brought out, leaving him only a space of 12 or 14 inches in which to stand, and without any guards or rails or other means by which the plaintiff could protect or maintain himself in a secure position.

In case negligence of the defendant is established and the question of contributory negligence arises, this order of the foreman would be pertinent also in repelling an imputation of that kind. But so far as now disclosed there would seem to be very little, if any, evidence of contributory negligence to be considered.

There was error in directing a nonsuit, and the plaintiff is entitled to have his cause submitted to a jury. To that end a new trial is awarded.

New Trial.