## BYERS v. CARNEGIE STEEL CO.

(Circuit Court of Appeals, Sixth Circuit. February 25, 1908.)

### No. 1,712.

**1. EVIDENCE—WEIGHT—CREDIBILITY OF WITNESSES.**

In the absence of established facts and circumstances with which one's testimony cannot be reconciled, it cannot be disregarded as incredible.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 20, Evidence, § 2437.]

**2. MASTER AND SERVANT—INJURY TO SERVANT—RES IPSA LOQUITUR.**

Though generally, in actions by employés for negligent injury, the fact of an injury raises no presumption of negligence on the employer's part, when the character of an accident and the circumstances in which it occurs are such as to point strongly to a condition which is abnormal and dangerous and to a long-continued existence of such condition, under circumstances indicating that the employer by reasonable care should have known of such condition, and where the evidence shows that the employé suffered injury through no negligence of his own and through no risk assumed by him, and that such abnormal and dangerous condition was the proximate cause of the accident, the fact of the relation of employer and employé does not forbid an inference of the employer's negligence from the fact of the accident, notwithstanding the absence of direct testimony, by personal observation, of the existence of the specific defect alleged to have caused the accident.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 881, 898.]

**3. SAME—FELLOW SERVANTS—NATURE OF COMMON SERVICE.**

A hydraulic elevator used in a steel works not being a machine whose condition as to safety is constantly changing with its use, so as to require from the persons tending it, as a part of the ordinary use of it, reconstruction or readjustment of parts, as they become worn out or displaced, for materials or new parts supplied by the master for that purpose, the operator of the lever of the elevator and the millwrights were not, respecting the performance of duties of inspection and repair, fellow servants of one employed to operate an electrical locomotive in pulling ladle cars onto the elevator.

[Ed. Note.—Who are fellow servants, see notes to Northern Pac. R. Co. v. Smith, 8 C. C. A. 668; Flippin v. Kimball, 31 C. C. A. 286.]

**4. SAME—EVIDENCE—SUFFICIENCY.**

Evidence in an action for injury to an employé caused by the sudden rising of an elevator caused by a defect in the hydraulic cylinder *held* sufficient if believed, to justify an inference that the sudden rising was due to a defective valve, and that such defect was or should have been known to defendant by ordinary care in inspection; thus meeting the burden of proof imposed upon plaintiff.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 954–977.]

In Error to the Circuit Court of the United States for the Eastern Division of the Northern District of Ohio.

This case is here for the second time. The plaintiff, an employé of the defendant in the operation of an electrical locomotive, was injured by the sudden rising of a hydraulic elevator or "jack," used in defendant's plant in carrying cars of molten metal from the furnaces to the mixer. The method of operation of the elevator, and the manner in which the accident occurred, are described in the opinion of this court upon the former review. Carnegie Steel Co. v. Byers, 149 Fed. 667, 82 C. C. A. 115, 8 L. R. A. (N. S.) 677. Upon the former trial as well as upon the second, it clearly appeared that the sudden rising of the elevator must have occurred through either an ac-

tual manipulation of the lever, or a defect in the valves regulating the admission of water. Upon the former trial there was no evidence that the elevator had ever risen before the time of the accident except under actual manipulation through the lever. There was no direct evidence of any defective condition of the valves. On the contrary, the testimony on the former trial indicated that an upward movement of the elevator, due to defective valves, would not be so sudden and swift a rise as described by plaintiff. There was affirmative and uncontradicted evidence that an inspection of the valves had been made at 8 o'clock of the morning of the accident, the spools examined, new leathers put on, and the valves left in such condition that they could not leak, and that this condition of the valves was shown by actual test at that time. The testimony of the alleged reported working loose of the spools at 6 p. m. (two hours before the accident) was disputed by the millwright and one of the assistants alleged to have taken part in the examination thereof. The testimony on the part of the assistant (the only one who testified to such examination) was that he found nothing wrong with the spools. The testimony was affirmative that the valve worked normally for hours before the accident and that it worked normally immediately after the accident, and without repair.

The trial court instructed the jury that the circumstance of the rising of the elevator as shown would permit an inference of negligence upon the part of defendant, and throw upon defendant the burden of showing that it was in the exercise of ordinary care. It was held by this court under the circumstances appearing in the record the doctrine of res ipsa loquitur did not apply; that the burden was upon the plaintiff to show that the sudden and single erratic upward movement of the elevator was due to a defect in the mechanism which was known, or should have been known, to defendant, and which it had neglected to repair; that there was no evidence justifying an inference that the movement of the elevator was due to a defective valve and that such defect was known, or might have been known, by ordinary care in inspection; but that under the evidence the cause of the accident was wrapped in doubt and mystery, the indications pointing strongly to a premature movement of the lever by the servant who had charge of the operation of the lever. Judgment was reversed and a new trial ordered.

Upon the second trial the defendant introduced no testimony. The testimony presented by the plaintiff was uncontradicted that a sudden rise of the elevator, such as shown in the evidence, could have occurred only through either a manipulation of the lever or a working loose of the spools; that when the valves were in normal condition, they would hold the elevator stationary when the lever was at center, and that an automatic rising of the elevator would be impossible when the lever was either at center or at "extreme reverse." The only workmen who, so far as the evidence shows, could have touched the lever testified, without contradiction, that it had not been touched by them since it was last sent down, five minutes before the accident. This testimony was more complete than that offered on the former trial. The testimony was also express and uncontradicted that, by reason of the alleged varying pressure of the water under ordinary circumstances, a loose working of the spools would have a tendency to cause the elevator to rise suddenly in the same manner it is testified to have risen at the time of the accident. There was no evidence of an inspection or testing of the valves on the morning of the accident, nor of the renewal of the leathers thereof, nor of the condition of the valves at that time, nor that the latter worked normally immediately after the accident. The testimony of the reported working loose of the spools at 6 p. m. (two hours before the accident) was undisputed. The testimony of the assistant millwright, Seaborn, tended to show that nothing was done by way of attempting to correct the reported looseness except to grease the spools, and that these spools were, after being greased, put back and the water turned on, and a call given to the operator above that the elevator was ready for use. There is no testimony as to the actual condition of the spools at 6 o'clock, except that Seaborn—who says it was not his duty to examine the spools—states that he saw nothing wrong with them. There is no affirmative testimony indicating that any examination of the leathers was had. The testimony of an expert, Popovich, was to

the effect that greasing the spools would have no tendency to overcome their loose-working, as the great pressure of the water when turned on (600 to 750 pounds to the square inch) would immediately cut off the grease; that a test by listening was necessary after the spools were replaced to determine whether they worked loosely. Seaborn testified that no test was made after the spools were put back to determine whether they were still loose. The plaintiff introduced the uncontradicted testimony of one Harrof, the operator in charge of the elevator in question, by day and night turns, "week about," for about three months before the accident, to the effect that for two or three months before the accident the machine was in such defective condition that even when the elevator was down and the lever in "extreme reverse" (as when the elevator was being lowered), the elevator would not always stay down; that on three occasions within the two or three months next preceding the accident, when the lever was so at "extreme reverse," the elevator, without warning and without it or the lever being touched, jumped up suddenly and rapidly for a distance of two feet or more, the lever flying back past the center; that one of these occasions was about two or three months before the accident, another two weeks later than the first, and the third but a short time before the accident. The witness further testified that during these two or three months before the accident he had when on duty, for the purpose of preventing the sudden rising of the elevator, been in the habit, on his own motion and on his own sole authority, of tying the lever to the railing which went around the shaft by means of a rope which he got for himself; that he was not "supposed" to use a rope, and that no other precaution was provided for preventing the rising of the elevator; that on three occasions previous to the accident, and within two or three months immediately preceding it, this rope had caught fire through sparks from the mixer or converter and had been burned off, and that Harrof had each time supplied its place by a new rope. Harrof was not on duty at the time of the accident. No rope was in use at or for several hours before the accident. The testimony of the witness Harrof was not introduced on the former trial. The testimony as to plaintiff's ignorance that the elevator was subject to such sudden rise, or that the machinery was in any way defective or out of repair, as well as of his freedom from negligence, is undisputed. The trial court directed a verdict for defendant.

Charles Koonce, for plaintiff in error.

C. A. Manchester, for defendant in error.

Before SEVERENS and RICHARDS, Circuit Judges, and KNAPPEN, District Judge.

KNAPPEN, District Judge (after stating the facts as above). If the evidence of the operators of the lever, to the effect that it had not been touched since the elevator was lowered five minutes before the accident and the lever then left at extreme reverse, is to be believed, any inference that the sudden starting was due to a premature movement of the lever on the part of the operator, and thus through the negligence of plaintiff's fellow servant, was excluded. If the testimony of the expert Popovich is likewise to be believed, the sudden rising of the elevator could have been due only to a loose working of the spools, and there was no affirmative evidence that the spools were not working loosely. If the testimony of the witness Harrof is to be believed, the inference is permissible that the valves had been in an abnormal and dangerous condition for two or three months before the accident, and so plainly abnormal and dangerous, in view of the testimony as to the use of the rope and its reported burning off and resupplying, as to justify an inference that the defendant company knew, or by the exercise of ordinary

care should have known, of this abnormal and dangerous condition. We are asked to disregard Harrof's testimony; but, in the absence of established facts and circumstances with which that testimony could not be reconciled, we cannot say that it is not credible. Moreover, if the testimony of the witness Seaborn is to be believed, the defendant had actual notice, on the day of the accident, that the spools were working loosely, and the testimony of the witness Popovich, if believed, was evidence that no sufficient inspection was made after such express notice to determine whether the defect had been remedied. In a word, if the undisputed testimony of the witnesses referred to is to be believed, the cause of the accident is not wrapped in doubt and mystery, but the inference would be fairly permissible that it must have been due to a defective valve, and that this defective condition should have been known to the defendant in the exercise of ordinary care.

Upon the record before the court on the former review it was held that the fact of plaintiff's injury justified no inference of defendant's negligence, for there the evidence was too conjectural to justify an inference that the injury was not the result of a risk plaintiff assumed, as the negligence of the operator of the lever, but was, on the other hand, due to a defect which the defendant knew, or should have known, existed. This holding, under the circumstances there presented, was amply supported by the authorities cited in the former opinion.

It is the general rule, in actions by employés for negligent injuries, that the mere fact of an injury raises no presumption of negligence on the part of the employer. In Patton v. Texas & Pacific Ry. Co., 179 U. S. 658, 21 Sup. Ct. 275, 45 L. Ed. 361, it is said that while in the case of a passenger the fact of an accident carries with it a presumption of negligence on the part of the carrier, a presumption which in the absence of some explanation or proof to the contrary is sufficient to sustain a verdict against him, a different rule obtains against an employé; that the fact of accident carries with it no presumption of negligence on the part of the employer, but that it is an affirmative fact for the injured employé to establish that the employer has been guilty of negligence, the court saying:

"When the testimony leaves the matter uncertain, and shows that any one of a half dozen things may have brought about the injury, for some of which the employer is responsible and for some of which he is not, it is not for the jury to guess between these half dozen causes, and find that the negligence of the employer was the real cause, when there is no satisfactory foundation in the testimony for that conclusion."

As stated by this court in Cincinnati, etc., Ry. Co. v. South Fork Coal Co., 139 Fed. 528, 71 C. C. A. 316, 324, 1 L. R. A. (N. S.) 533, the reason for the difference in the rule of presumption between actions by employés and actions by those not sustaining such relation, is the peculiar contract of the employé by which he assumes the risks incident to his employment, including the negligence of his fellow servants, and the resulting requirement that the injured employé show that the injury of which he complains was the result of a risk he did not assume. The rule stated in Patton v. Texas &

Pacific Ry. Co. has been applied by this court in Illinois Central R. R. Co. v. Coughlin, 132 Fed. 801, 65 C. C. A. 101, 103—where the foregoing extract from the opinion in Patton v. Railroad Company was quoted—and in Carnegie Steel Co. v. Byers, 149 Fed. 667, 82 C. C. A. 115, 117, 8 L. R. A. (N. S.) 677, upon the former hearing of this case. In each of the cases cited the inference of negligence as to risks not assumed by the employé was held to depend upon conjecture. But there is no hard and fast rule that the doctrine of res ipsa loquitur can in no case be applicable in a suit by an employé against an employer for negligent injuries. On the contrary, the rule referred to has been applied in numerous cases of that nature, the applicability of the rule being determined by the circumstances under which the accident is shown to have happened.

In Griffin v. Boston & Albany R. R., 148 Mass. 143, 19 N. E. 166, 1 L. R. A. 698, 12 Am. St. Rep. 526, which was an action by an employé for alleged negligent injury, it was said (page 146 of 148 Mass., page 167 of 19 N. E. [1 L. R. A. 698, 12 Am. St. Rep. 526]):

"No general rule can be laid down that the mere occurrence of an accident is or is not sufficient prima facie proof of actionable negligence, for each case must depend upon its own circumstances; and what would be sufficient proof of such negligence in an action brought against a railroad company by a passenger, or by a stranger, might not be so in an action brought by one of its servants."

And, as stated elsewhere in the same opinion (page 145 of 148 Mass., page 167 of 19 N. E. [1 L. R. A. 698, 12 Am. St. Rep. 526]):

"If the accident appears upon the evidence to be as consistent with the absence of negligence for which the defendant is responsible as with the existence of such negligence, the plaintiff must fail, and the case should not be left to the jury."

In Hamilton v. Kansas City Southern Ry. Co., 123 Mo. App. 619, 100 S. W. 671, 674, it is not altogether inaptly suggested that the difference between the rule res ipsa loquitur as applied to a passenger or stranger and a servant is that in the case of a passenger a presumption aids the occurrence to speak, while in the case of a servant there is no such aid, and the occurrence itself must speak its character.

Among the cases in which the rule of presumption or prima facie evidence of negligence has been applied in favor of employés are Sullivan v. Rowe, 80 N. E. (Mass.) 459; Hemphill v. Buck Creek Lbr. Co., 141 N. C. 487, 54 S. E. 420; Sackewitz v. Amer. Bis. Mfg. Co., 78 Mo. App. 144, 151; Gorman v. Milliken (Sup.) 86 N. Y. Supp. 699; Moynihan v. Hills Co., 146 Mass. 586, 16 N. E. 574, 4 Am. St. Rep. 348. In Sullivan v. Rowe, where a buffer iron, used to stop at a desired point buckets running along the iron rail of a trench machine owned and operated by defendant, slipped off a bolt on which it was hung, by reason of the coming out of the split key used to hold it in place, and fell on the plaintiff, an employé of the defendant, while working in a trench below the machine, the occurrence was held to be of itself evidence of negligence, the evidence being conflicting as to whether or not, at the time of the accident,

there was a rope attached to the bolt on which the buffer iron was hung which would prevent it from falling in case the split keys came out. In Hemphill v. Buck Creek Lumber Co., where a brakeman was injured because of the derailment of a car on which he was riding, occurring through a spreading of the track on account of the rotten cross-ties, it was held that a presumption of negligence on the part of the master arose. In Sackewitz v. American Biscuit Mfg. Co., the plaintiff, a packer in the factory, was struck by the falling of a piece of timber which was being used in making repairs to the building. It was held that the circumstances under which the plaintiff was injured were such as to create a presumption of negligence, and that the doctrine of res ipsa loquitur was applicable. In Gorman v. Milliken, where a derrick furnished by the employer fell, injuring an employé, the failure of the master to explain the fall was held prima facie evidence of his negligence, the court saying that "the burden of proof is not shifted to the defendant by evidence of the fall of the derrick, as is claimed by the plaintiff, but the burden imposed upon the plaintiff of showing defendant's negligence is met by evidence of the fall of the derrick." Moynihan v. Hills Co. contains a valuable discussion of the rules governing the assumption of risk by an employé with reference to failure to inspect and repair machinery; and is authority for the proposition that the elevator in question, not being a machine whose condition as to safety is constantly changing with its use, so as to require from the persons tending it, as a part of the ordinary use of it, reconstruction or readjustment of parts, as they become worn out or displaced, for materials or new parts supplied by the master for that purpose, neither Harrof, the mere operator of the lever, nor the millwrights were, with respect to the performance of duties of inspection and repair, fellow servants of the plaintiff.

It is true that no one has testified in this case, from actual view of the valve, that it was out of repair. But the evidence presented by the plaintiff, if believed, excludes any other cause for the accident; and in such case it is open to the jury to infer the existence of such cause, even in an action by an employé. This rule has been frequently recognized. Thus: In McLean v. Pere Marquette R. R. Co., 137 Mich. 482, 485, 10 N. W. 748, a railroad company permitted planing mill refuse to be loaded loosely on an open rack car, so that as the car was being transported some of the material was likely to be dropped from the car. The plaintiff, a section hand, was injured by derailment of a hand car, apparently caused by its striking, upon the rail, a piece of wood of the same material as that with which the car (which had lately passed over the track) was loaded. There was no other probable theory of the cause of the accident. The evidence as to whether the suction of the train upon such a piece of wood could have caused it to lodge on the track was conflicting. It was held that it was open to the jury to infer from the testimony that the piece of wood had fallen from the car. In Schoepper v. Chemical Co., 113 Mich. 582, 586, 71 N. W. 1081, where an employé was injured by the explosion of chemicals, the cause of which was not susceptible of absolute demonstration, but

there was room for drawing inferences better supported upon plaintiff's theory than upon that of the defendant, it was held that the cause of the injury did not rest wholly upon conjecture, and that it was open to the jury to infer the cause of the accident from the circumstances attending it. In Fearington v. Blackwell-Durham Co., 141 N. C. 80, 53 S. E. 662, a freight elevator, not under operation by the plaintiff employé, suddenly dropped, without any assignable reason. It was held that under the doctrine of res ipsa loquitur there was evidence to be considered by the jury as to the negligent and defective condition of the elevator, and a negligent breach of duty on the part of the defendant. In Samuels v. McKesson (Sup.) 99 N. Y. Supp. 294, after an elevator, which was being run by an employé other than the plaintiff, had risen a few feet, the bottom of it was torn out. There was evidence that it was in the habit of shaking, tilting, and jerking, as though the sides of the bottom caught. It was held that such facts were sufficient to justify an inference of negligence under the doctrine of res ipsa loquitur. See, also, Wabash Screen Door Co. v. Black, 126 Fed. 721, 725, 61 C. C. A. 639.

The proposition is fully supported, both by reason and authority, that where the character of an accident and the circumstances under which it occurs are such as to point strongly to a condition which is abnormal and dangerous, and to a long-continued existence of such abnormal and dangerous condition, under circumstances indicating that the employer by the exercise of reasonable care should have known of such condition, and where the evidence shows that the employé had no knowledge of such condition, and suffered injury through no negligence of his own and through no risk assumed by him, and that such abnormal and dangerous condition was the proximate cause of the accident, the fact of the relation of employer and employé does not forbid an inference of the employer's negligence from the fact of the accident under circumstances so stated; notwithstanding the absence of direct testimony, by personal observation, of the existence of the specific defect alleged to have caused the accident. This proposition is entirely consistent with the proposition applied upon the former review of this case, and is in no way in conflict with the proposition that inference of negligence depending upon mere conjecture will not be permitted, nor with the proposition that the court will not permit negligence to be shown by testimony of an incredible situation.

We are constrained to hold that the evidence presented upon the second trial was such as, if believed, to justify an inference that the sudden rising of the elevator was due to a defective valve, and that such defect was or should have been known to defendant by ordinary care in inspection, and thus to meet the burden of proof imposed upon the plaintiff.

Judgment reversed, and new trial ordered.