ROCHFORD v. PENNSYLVANIA CO.

(Circuit Court of Appeals, Sixth Circuit. November 20, 1909.)

No. 1,946.

1. TRIAL (§ 178*)—DIRECTION OF VERDICT—EFFECT OF MOTION.

A motion for an instructed verdict upon the ground of an insufficiency of the evidence presupposes that the witnesses testifying to the facts adduced to make a case for the party against whom the motion is made are worthy of credit, and challenges the sufficiency in law of such facts to sustain a verdict based thereon.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 402; Dec. Dig. § 178.*]

2. TRIAL (§ 140*)—PROVINCE OF COURT AND JURY—CREDIBILITY OF WITNESSES.

The credibility of a witness is peculiarly a question for the jury, under proper instructions.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 334, 335; Dec. Dig. § 140.*

Credibility of witnesses as question for jury, see note to Missouri, K. & T. Ry. Co. v. Collier, 88 C. C. A. 143.]

3. TRIAL (§ 139*)—TAKING CASE FROM JURY—WEIGHT AND SUFFICIENCY OF EVIDENCE.

The mere fact that there is a preponderance of the evidence in favor of the party moving for an instructed verdict does not require the judge to take the case from the jury, even though it might justify the granting of a new trial.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 332, 333, 338–341, 365; Dec. Dig. § 139.*]

4. TRIAL (§ 139*)—TAKING CASE FROM JURY—WEIGHT AND SUFFICIENCY OF EVIDENCE.

If a plaintiff has produced material evidence sufficient, if believed and uncontradicted, to warrant a verdict, no amount of contradictory evidence will authorize the judge to take the question of its effect and weight from the jury.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 332, 333, 338–341, 365; Dec. Dig. § 139.*]

5. TRIAL (§ 178*)—DIRECTION OF VERDICT—EFFECT OF MOTION.

On a motion by defendant for an instructed verdict, it is the duty of the trial judge to give the plaintiff the benefit of every fair inference which might reasonably be drawn from the evidence by the jury, when guided by sound processes of reasoning and applicable principles of law.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 401, 402; Dec. Dig. § 178.*]

6. MASTER AND SERVANT (§ 285*)—ACTION FOR INJURY TO SERVANT—QUESTIONS FOR JURY—CAUSE OF INJURY.

In an action by a switchman against the railroad company to recover for an injury by being struck by a switch engine while operating a switch in the yards, the allegations of the petition and the evidence in support thereof *held* sufficient, as to the manner in which the injury occurred, to require the submission of the case to the jury.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 285.*]

In Error to the Circuit Court of the United States for the Northern District of Ohio.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Action by George Rochford, by his next friend, Alice Rochford, against the Pennsylvania Company. Judgment for defendant on directed verdict, and plaintiff brings error. Reversed.

D. F. Anderson, for plaintiff in error.
W. C. Boyle, for defendant in error.

Before LURTON, SEVERENS, and WARRINGTON, Circuit Judges.

LURTON, Circuit Judge. This is an action in tort by the plaintiff in error for an injury sustained while in the line of his duty as a yard switchman for the defendant railway company. At the close of all the evidence the court instructed the jury to return a verdict for the defendant. This is the only error assigned.

Rochford claims to have been struck, while handling a yard switch, by the tender of a yard engine while backing up. It was his duty as head brakeman to follow the engine and open and close switches. The switch he was required to handle in this instance was what is called a "double slip switch." It lay between two substantially parallel tracks, connecting them, and allowing movement in either direction by turning the lever placed about its center. The length of the entire switch was 42 feet. Thus it was 21 feet from the axle of the operating lever to the switch points at either end. The tracks connected by this device ran east and west and were parallel to one another; the device being just on the south side of the southerly of the two tracks. The switch bar or lever was a bar with a ball on the upper end, having a slot to enable the operator to grasp it. When set for a movement, this lever arm lies close to the ground parallel with the tracks; the lever being held secure between two iron posts forming a latch or catch. When this ball upon the end of the lever was pointing west, the switch was set for a western movement; and when pointing east, for an eastern movement. To change from one to the other, the operator, standing on the ground, grasped the iron ball, raised the lever up to a perpendicular position, and then pushed it clear over the other way, until the bar caught in the iron latch on the ground, which held it as set. The movement of the engine attended by Rochford involved the crossing of this double, or "puzzle," switch, as it is called, twice; that is, it came from the west upon one track, and was to be switched over and go east upon the other. Rochford rode upon the switchboard of the engine until opposite the switch lever, and then, getting off, crossed both tracks, grasped the ball of the lever, it being set for the westerly movement of his engine, raised it up, and turned it down to the ground, so that the ball was pointing east. In the meantime his engine was standing west of the switch points, waiting for a signal from Rochford that the switch was set. The claim of Rochford was that before he gave this signal, and before he had completed the operation of changing the switch, the engine moved backward, without warning, and struck him.

The evidence for the defense tended strongly to show that he did give the signal, which was then repeated by his conductor, and that

he was endeavoring to step upon the switchboard behind the moving tender, when he fell and was run over. The learned trial judge said to the jury that he was convinced that the plaintiff was hurt in attempting to get upon the tender, and instructed a verdict against him.

If there is material evidence tending to make a case upon which the jury might reasonably find a verdict for the plaintiff, it must be found solely in his personal testimony; for there are no facts in any other part of the evidence upon which a verdict could rest. That the conductor of the switching crew was the superior of Rochford under the Ohio fellow servant act is not disputed. That it was the duty of the engineer not to move until Rochford signaled the setting of the switch is also conceded. But the engineer was on the wrong side to get a signal from Rochford. The conductor of the switch crew was on the ground some distance east, and in plain view of this switch and of Rochford. He testified that Rochford gave the ready signal, and that he communicated it to the engineer. The fireman, from his side of the engine, could see Rochford; and he also testified that he saw Rochford give the signal, and so notified the engineer. If the conductor gave such signal before Rochford did, and thus caused a premature movement of the engine, his act, it is conceded, would be the negligent act of one standing as a vice principal under the Ohio statute. Rochford's side of the matter is that he gave no signal, that the engine moved back without warning, and that he was struck while engaged in the operation of the lever. Now, it is clear that, if Rochford testified to facts which, if credited and uncontradicted, would make out a case upon which a verdict might be rested, it was error to withdraw the case from the jury.

In support of the action of the court in directing a verdict, two points have been urged: First, that Rochford's evidence as to what he was doing when struck by the engine is in conflict with the allegations of his petition and other conceded or demonstrable facts of the situation; and, second, is self-contradictory upon vital points. We may lay upon one side any question of the credibility of Rochford as a witness, either because he contradicts himself, or because he is contradicted by other witnesses as to the facts material to a verdict in his favor.

A motion for an instructed verdict, upon an insufficiency in law of the evidence, presupposes that the witnesses testifying to the facts adduced to make a case for the party against whom the motion is made are worthy of credit. It is as if the party making the motion had demurred to the evidence and is equivalent to saying:

"We concede the truth of the facts which are relied upon to make a case for the plaintiff, or a defense for the defendant; but they are insufficient in law to support a verdict, which must be founded upon such facts."

The credibility of a witness is peculiarly a question for the jury, under proper instructions by the court. 1 Greenleaf on Evidence (14th Ed.) § 10; 6 Cyc. p. 694. Neither is the mere fact that there is a preponderance of the evidence in favor of the party moving for an instructed verdict enough to require the judge to take a case from the jury, even though it might justify a new trial. City, etc., Ry. v.

Svedborg, 194 U. S. 201, 24 Sup. Ct. 656, 48 L. Ed. 935; Mt. Adams, etc., Ry. v. Lowery, 74 Fed. 463, 20 C. C. A. 596. If the plaintiff has produced material evidence, sufficient, if believed and uncontradicted, to warrant a verdict, no amount of contradictory evidence will authorize the trial judge to take the question of its effect and weight away from the jury. Railroad Co. v. Slattery, 3 App. Cases, 1155; Insurance Company v. Doster, 106 U. S. 30, 32, 1 Sup. Ct. 18, 27 L. Ed. 65; Pleasants v. Fant, 22 Wall. 116, 22 L. Ed. 780.

But it is said that the testimony of the plaintiff upon the facts material, and, indeed, vital to any recovery by him, are in flat contradiction with undeniable physical conditions, which make his evidence incredible and create no real conflict of testimony. Penn. Co. v. Whitney (C. C. A.) 169 Fed. 572, 576. Byers v. Carnegie Co., 159 Fed. 347, 86 C. C. A. 347, 16 L. R. A. (N. S.) 214 That a connection had been made before the engine moved in the direction of Rochford must be conceded No movement of the switch itself was possible with the weight of even the rear wheels of the tender upon the switch points. It follows, therefore, that the operation of the setting of the switch must have been completed before the movement of the engine, at least far enough to make a sufficient connection to enable the engine to move out upon the switch as set for the movement out.

Upon this state of facts counsel say that it follows that the averment of the plaintiff's petition and the testimony of the plaintiff himself that he was struck while operating the switch is necessarily untrue and incredible. It was the duty of the trial judge, and also the duty of this court, when his action is assigned as error, to give the plaintiff the benefit of every fair inference which might reasonably be drawn from the evidence by the jury, when guided by sound processes of reasoning and applicable principles of law. Now it is said that the pleading estops the plaintiff by in substance and meaning charging that the movement of the engine which struck him occurred while he was operating the switch.

Recurring to the way this switch was handled: When Rochford started the movement, the lever was down on the ground, and the ball upon its end pointed west, or toward the engine, standing 21 feet away and just beyond the ends of the switch points to be moved. His back, when raising this lever up, was, as he says, toward the engine, and so continued while he pushed it down upon the other side, so that the ball would point east. The last operation connected with setting was to latch the switch lever bar down by means of a device close to the ground. Rochford says that he had some trouble about this, and had to use his foot to press the bar into the latching appliance. All of this time his back was to the engine. This operation of latching was for the purpose of holding the switch as set; the points being in connection with the rails from which the engine should come at one end and with the rails upon which it was to move at the other. The fastening of the latch, when the switch was set, must be fairly considered as a part of the operation of the switch lever. Neither does it necessarily follow that the points were not in proper connection with the rails at either end after the lever was pushed down, so as to point

east, although the operation of latching remained to be done as a security against accidental movement out of connection.

The allegation of the pleading was not, therefore, such a definite statement as to the stage of his operation of the switch lever as created an irreconcilable conflict with testimony tending to show that the engine might move upon the switch points before the operation of latching the bar down into its new position had been finished; and the jury might reasonably infer from the nature of the mechanism that such movement was possible before it was fastened down, even against a general statement to the contrary. Now Rochford testified that he did have difficulty in fastening down the lever bar, and had to use his foot to put it between the low posts forming the latch. That this was regarded by him as a part of the movement of operating the lever, and was the part which engaged him at the moment before his contact with the moving tender, is made plain by him in the course of his original examination, when, after speaking of his trouble in the matter of latching, he says:

"I went to straighten up. I stepped a little to the north, and had hardly gotten straightened up, when the engine hit me."

This account of the matter he repeated more than once upon his cross-examination. It must, however, be conceded that more than once upon his cross-examination he described the lever bar as only half way down, the ball standing upright, when he was struck. But he later restated the matter as in his original examination, by saying that the bar was down and pointing east, and the latch fastened, and that he was struck when raising up to turn and give the signal. The question as to whether the jury should believe the one statement or the other, or believe the witness at all, was a question for the jury. If, notwithstanding his contradictions, the jury should believe that the operation of latching had been just finished, and that he was hit when in the act of raising and turning to give the signal, he had a case to go to the jury upon the main issue as to whether he had not given the signal before the engine moved, or had done so, and was attempting to take his proper place upon the switchboard, and was hurt through one of the risks assumed as incident to his employment.

It is next suggested that he must have been endeavoring to get upon the switchboard when hit, because, if he stood where he says he stood, he could not have been hit as he says he was. The distance from the switch handle to the outside of the nearest rail of the track upon which the engine was moving was 50 inches. The overhang of the tender, including the projecting iron ring for holding a pushing pole, was 27 inches. This left only 23 inches of clear space. If we assume that Rochford's body was not beyond the line of the bar he was handling, this was a small space of safety. If, however, his body was in part between the bar and the rail, or if, as he says, he was raising up from a stooped position, and slightly stepping toward the rail and turning, he might well be within striking distance of this passing engine. The question was clearly one for the jury.

The judgment must be reversed, and cause remanded for a new trial.