## CHESAPEAKE & O. RY. CO. v. GOWEN.

### No. 6252.

Circuit Court of Appeals, Sixth Circuit.

June 6, 1933.

James P. Wood, of Cleveland, Ohio (Wilson & Rector, of Columbus, Ohio, and Tolles, Hogsett & Ginn, of Cleveland, Ohio, on the brief), for appellant.

R. B. Newcomb, of Cleveland, Ohio (Newcomb, Newcomb & Nord, of Cleveland, Ohio, on the brief), for appellee.

Before MOORMAN, HICKS, and SIMONS, Circuit Judges.

HICKS, Circuit Judge.

Action by appellee, Gowen, to recover damages of appellant, the Chesapeake & Ohio Railway Company, for personal injuries. The suit was brought under the Safety Appliance Act of April 14, 1910, c. 160, § 2 (45 USCA § 11), which required all railroads engaged in interstate commerce to equip their freight cars with efficient hand brakes. Appellant complains of the denial of a directed verdict.

It is conceded that appellant was a common carrier engaged in interstate commerce. It is undisputed that appellee, a brakeman, was a member of a crew operating under Conductor Ottinger, in the yards of appellant at Lynchburg, Va., about 4:30 on the morning of November 1, 1930, and engaged in breaking up a train and setting out the cars on different tracks; that New York Central freight car No. 241,342 had been set out on track No. 3, and that the conductor had ordered appellee to ride this car eastwardly to a certain point and stop it; that, while the car was moving at about four miles per hour, appellee stood upon the brake step at the easterly end of the car, which was about three feet from the top, and was the proper place for a brakeman to ride while operating the brakes; that the brake itself was an ordinary one consisting of the brake staff attached perpendicularly to and extending above and below the end of the car with the brake wheel attached to the top and the brake chain attached near the bottom; that the operation of the brake required turning the wheel to the right with a corresponding movement in the brake staff, so that the chain normally wrapped around the lower end of the staff without overlapping upon itself until the brake was set. The lower end of the staff to which the chain was joined was protected by a U-shaped stirrup or guard attached to the sill of the car.

We must depend upon the testimony of appellee for the immediate facts of the injury. He said in substance that he stood upon the step, and, holding to the top grabiron with his left hand, pulled in the slack with his right, evidently meaning that he turned the wheel far enough to take up the slack in the chain. He stated that, when the car reached the point where he thought it should be slowed down, he put the pressure on "pretty hard" with his right hand; but it did not seem to slow down as it should have done if the brake had been operating properly, so he took a deep hold with both hands and threw his weight on the wheel and turned it to the right, when it suddenly released with a jerk toward the right and threw him to the ground between the rails where he was seriously injured by the car from which he fell. He said in substance that he had never experienced such a jerk

before and that he thought the chain had broken. We think that the evidence of appellee was sufficient to require the submission of the case to the jury. The fact that the brake failed to function demonstrated its inefficiency. Didinger v. Penna. R. Co., 39 F.(2d) 798 (C. C. A. 6); Detroit, T. & I. R. Co. v. Hahn, 47 F.(2d) 559 (C. C. A. 6).

But, in addition to the immediate facts of the occurrence, the record contains evidence which we think substantially tended to show a particular defect in the braking equipment.

W. H. Morris, another brakeman and a member of the crew, testified that before appellee was removed from the scene he examined the brake and observed that the chain, instead of being wrapped one lap after another around the staff, was wrapped one around and a half over itself upon the staff. Some time after the accident, the car was removed from track No. 3 to the "beer track" in the same yard, where on the next day the brake was examined by L. E. Tyree, a cousin of appellee. He testified that he stood on the brake step and undertook to set the brake; that the first attempt was successful, but that upon the second and third trials the chain became knotted around the end of the staff and caught on the side of the bracket or stirrup leaving slack in the chain behind the staff.

T. L. Peters, a brakeman, and James Hill, an extra freight conductor, testified that, while the car was on the "beer track," they made a joint inspection of the brake on the day after the accident. Each testified in substance that Peters stood on top of the car and made four or five efforts to set the brake. Hill stood below to watch the result, and on two or three of these tests the chain knotted or overlapped upon itself and touched the sides of the bracket; that is, the chain caught upon the bracket and did not freely pass through it. Hill further testified that, whenever a chain, so caught, is pulled loose, it gives the man winding up the brake "a right smart jerk."

We regard the evidence of these witnesses for appellee as something more than a scintilla. It was positive and substantial, and we think that the evidence taken as a whole is sufficient to support the verdict. It is conceded that the brake was defective and inefficient if the chain should overlap upon the brake rod until it knotted and hung upon the stirrup while the brake was being set, and that, if the brakeman should put sufficient pressure upon it, the chain would probably release itself suddenly and jerk him from the car. We think that a jury might reasonably conclude that the chain did so catch when appellee took up the slack, and that when he applied additional force its sudden release caused his injury.

Appellant introduced the testimony of a number of inspectors, some of whom examined the brake shortly before the accident, and others shortly afterwards. The substance of their evidence is that it was in good condition and operated perfectly, but, if appellee's evidence was sufficient to warrant a verdict in his favor, the court was not permitted to direct a verdict against him upon the strength of contradictory evidence. Rochford v. Penna. Co., 174 F. 81, 84 (C. C. A. 6); Minneapolis, St. P. & S. S. M. Railway Co. v. Galvin, 54 F.(2d) 202 (C. C. A. 6); Detroit, T. & I. R. Co. v. Hahn, supra.

Judgment affirmed.