Correa, Demandante y Apelante, *v.* The Fajardo Sugar Company, Demandada y Apelada.

Apelación procedente de la Corte de Distrito de San Juan, Sección Primera, en pleito sobre daños y perjuicios.

No. 2226.—Resuelto en abril 19, 1921.

Daños y Perjuicios—Accidentes del Trabajo—Res Ipsa Loquitur.—Aunque generalmente las cortes federales parecen inclinarse a resolver que la doctrina de *res ipsa loquitur* no es aplicable a una acción por daños establecida por un empleado contra su patrono, la regla así establecida no es aplicable en las jurisdicciones en que rige el derecho civil donde la doctrina de co-empleados es desconocida y donde la máxima en cuestión está en completa armonía con los principios en que descansa el Código Civil.

Los hechos están expresados en la opinión.

Abogados de la apelante: Sres. *J. B. Soto* y *A. García Veve.*

Abogado de la apelada: Sr. *J. Sifre, Jr.*

El Juez Asociado Sr. Hutchison, emitió la opinión del tribunal.

El demandante interpone recurso de apelación contra una sentencia que declara śin lugar la demanda, dictada después de declarada con lugar una moción de *non suit.*

La principal, si no la única, cuestión envuelta es si la doctrina de *res ipsa loquitur* puede o no ser invocada en un caso establecido por un empleado contra su principal, y de ser así, si el principio envuelto es o no aplicable a los hechos de este caso.

La prueba del demandante en tanto es pertinente a la cuestión es como sigue:

"Interrogatorio directo:

"¿Qué trabajo hacía Vd?—En los platos.

"¿Qué trabajo hacía Vd. en los platos?—Limpiarlos.

"¿A qué platos se refiere Vd?—Yo estaba limpiando el plato No. 1.

"¿Pero quiero decir, plato de qué?—Un cuadro de material donde cae el guarapo.

"¿Eso es en la fábrica?—Sí, señor.

"¿Allá por el mes de marzo de 1913 estaba Vd. haciendo ese trabajo?—Sí, señor.

"¿Mientras Vd. lo hacía le ocurrió a Vd. algún accidente?—Sí, señor.

"¿Qué sucedió?—Cuando acabé de limpiar el plato No. 1 que pasé para el 2, que iba a limpiar el 2, tenía que pasar por encima de un enrejillado que debajo queda una hamaca, cuando pasé fuí a coger el rastrillo con que estaba limpiando el plato, afirmé el pie en el enrejillado y se rompió y ahí me cogió debajo y me rompió la pierna.

"¿Qué quiere Vd. decir con eso que lo cogió debajo?—Que debajo estaba la hamaca.

"¿Cómo consecuencia de eso que le pasó?—Se me rompió esta pierna.

"¿Por dónde?—Por debajo de la rodilla.

"¿Era necesario para Vd. pasar por encima del enrejillado para hacer el trabajo?—Sí, señor.

"¿Vd. tenía que pararse allí?—Sí, señor.

"¿Cuál era la función de ese enrejillado, con qué fin lo tenían allí?—Era para pasar por encima de él para limpiar el plato.

"¿Eso ocurrió de día o de noche?—De noche.

"¿A qué hora?—Como entre 11 y 12.

"Repreguntas:

"Yo quiero que Vd. le explique a la corte detalladamente qué clase de enrejillado es ese por el que Vd. tenía que pasar de manera que la corte sepa de qué aparato se trata, de cómo estaba aquello.—La clase de enrejillado ese era de unos tabloncillos y ahí debajo estaba la hamaca.

"¿Para qué era esa hamaca?—Esa hamaca era para recoger el bagazo cuando venía el guarapo en el cedazo.

"¿Entonces ahí había un sitio por donde pasaba esa hamaca que llevaba el bagazo a dónde?—La hamaca grande del trapiche.

"¿Sobre esa hamaca había un enrejillado?—Sobre la hamaca chiquita.

"¿Ese enrejillado de qué era, de hierro o de madera?—De madera.

"¿Era un enrejillado que constaba de una sola pieza?—De distintas piezas en tabloncillos.

"¿Que ancho tenía cada tabloncillo más o menos?—Como una pulgada y media o una pulgada y cuarto de uno a otro.

"¿Es decir que habían varios tabloncillos estrechos, uno pegado al otro?—Sí, señor.

"¿Porque sufrió Vd. ese accidente, qué fué lo que pasó?—Que yo tenía que limpiar el plato No. 2 y al pasar por encima del enrejillado se rompió.

"¿Se rompió qué, todo o una de las tablitas o qué?—Unas tablitas.

"¿Cuántas tablitas, si Vd. lo sabe?—No me fijé en aquel momento, por donde cupo el pie.

"¿Pero Vd. no sabe cuántas tablitas se rompieron?—No señor."

Otro testigo dice:

"Interrogatorio directo:

"¿Qué trabajo hacía Juan Correa en la central cuando Vd. lo vió?—El trabajo que tenía Juan Correa era de limpiar los platos del trapiche viejo de la central; tenía que limpiar tres platos.

"¿Ese trabajo de Juan Correa lo hizo de día o de noche?—De noche; trabajaba de las dos de la tarde hasta las seis de la mañana.

"¿Vd. sabe si mientras Juan Correa trabajaba en la Central haciendo el trabajo que Vd. acaba de decir sufrió algún accidente?— Pues yo era trabajador de la central y traía las muestras del laboratorio de toda la central y cuando yo iba a buscar las muestras del laboratorio de los trapiches bajaba el señor Correa a limpiar los

mencionados platos, se paró en un enrejillado de madera y al tiempo de limpiar los platos se rompió el dicho enrejillado.

"¿Y qué ocurrió con ese motivo?—Pues en ese momento el único que se encontraba allí era.yo porque era el que iba a coger las muestras y como.yo solo no podía con él, el rail le arrolló la pierna y le hizo la rotura y entonces vinieron los demás peones y me lo ayudaron a sacar.

"¿Vd. se fijó si el había sufrido algún golpe?—Sí, señor: porque la pierna la tenía arrollada con el mismo rail.

"¿Eso es lo que llaman la hamaca?—Sí, señor, un rail de hierro.

"¿A qué hora ocurrió eso, de día o de noche?—Eso ocurrió como entre 11 y 12 de la noche.

"¿Vd. ha manifestado que no había allí otra persona nada más que Vd?—En la cuestión de haberse roto la pierna no había nadie allí, entonces a los gritos fué que vino la gente.

"Repreguntas:

"¿Este enrejillado era de madera?—Sí, señor.

"¿Cómo que ancho tenían las distintas tablas?—Yo no puedo manifestar el ancho.

"¿Un pie?—No puedo decir.

"¿Medio pie?—No puedo decir.

"¿Dos pulgadas?—Tampoco puedo decir.

"¿Cuánto tiempo trabajó Vd. allí?—Como un año.

"¿Trabajó cerca de ese enrejillado cómo un año?—No señor.

"¿Cuánto tiempo trabajó Vd. allí cerca de ese enrejillado?—Yo no cogía muestras por ese enrejillado.

"¿Cuándo fué la primera vez que Vd. pasó por ese enrejillado el día ese del accidente, si es que Vd. pasó sobre él?—Lo que yo quiero saber es lo siguiente: Vd. dice que ha trabajado un año en la Central Fajardo?—No completo.

"¿Vd. pasaba a menudo por ese enrejillado?—Como no, pasaba.

"¿Vd. lo conocía?—Sí, señor.

"¿Sabía dónde estaba?—Sí, señor.

"¿Sabía que estaba hecho de madera?—Sí, señor.

"¿Vd. nunca se fijó en el ancho más o menos de una de esas tablas, esto es, si era de un pie o de dos pies o de medio pie o de tres pulgadas más o menos?—No tuve la precaución de fijarme porque cuando yo iba a buscar las muestras no podía perder el tiempo.

"Interrogatorio directo:

"¿Pero Vd. vió el enrejillado?—Sí, señor.

"¿Vd. recuerda haberlo visto?—Sí, señor.

- "Entonces, Vd. tiene que recordar más o menos el ancho de la rejilla.   La parte contraria no le pide a Vd. una medida exacta.—De poder ir una pierna.

"¿Vd. dice que era un enrejillado?—Sí, señor.

"No le pedimos a Vd. el ancho de todo el puentecito sino de las tablas que formaban el enrejillado, ¿más o menos que ancho tenían? —Podían tener este ancho (aproximadamente tres pulgadas señala el testigo).

"Repreguntas:

"No es el espacio entre tabla y tabla sino el ancho de la tabla. ¿Eso es lo que Vd. quiere decir que tenía tres pulgadas?—Eso."

El apelante, además de la cita del caso de *Sweeney* v. *Erving,* 228 U. S. 233 y de varias decisiones de las cortes de último recurso de los diferentes Estados, insiste en que la doctrina invocada es peculiarmente aplicable en esta jurisdicción de acuerdo con las prescripciones de los artículos 1803, 1804 del Código Civil, en los cuales se funda esta acción como han sido interpretados por las cortes y comentaristas españoles.

El abogado de la demandada sostiene desde luego un criterio contrario y cita el tomo 20 de Ruling Case Law, páginas 188, 189, sección 157, Sherman y Redfield sobre Negligencia, tomo 1, página 442, el caso de *Pérez* v. *Guánica Centrale,* 17 D. P. R. 963, y un número de casos de Estados y Federales.

En el caso de Sweeney, la Corte Suprema de los Estados Unidos dijo lo siguiente:

"La regla general en acciones de negligencia es que la mera prueba de un accidente (empleando la palabra en el sentido liberal y corriente) no crea ninguna presunción de negligencia; pero en la aplicación de este regla se reconoce que existe una clase de casos donde las circunstancias que rodean el suceso causativo del daño son de tal carácter que ofrecen una base para inferir razonablemente que, si se hubiera usado el debido cuidado por la parte obligada a observarlo, el accidente no hubiera ocurrido.   En tales casos se dice, *res ipsa loquitur,* la cosa habla por sí misma; esto es, si no hay nada que explica o rebata la inferencia que surge de la manera en que

aconteció el accidente puede justamente llegarse a la conclusión de que el mismo fué ocasionado por negligencia.''

En el caso de *Ridge* v. *Norfolk Southern R. Co.*, L. R. A. 1917 E 215, la Corte Suprema de Carolina del Norte se refiere al caso citado en último lugar y a una decisión anterior, citado mucho más frecuentemente que ninguna otra por las cortes federales, para sostener la proposición de que la doctrina de *res ipsa loquitur* no es de aplicación a una acción establecida por un empleado contra su principal, a saber:

'' * * * Algunos tratadistas expresan que la Corte Suprema de los Estados Unidos no reconoce esta doctrina en acciones entre el principal y el empleado y el caso de *Patton* v. *Texas & P. R. Co.*, 179 U. S. 658, 45 L. ed. 361, 21 Sup. Ct. Rep. 275, se cita como autoridad para sostener este punto. La referencia en la opinión a esta doctrina se hace de paso, como se verá de una cuidadosa consideración de los hechos en ese caso. Pero aún cuando la corte así resolviera en ese caso, la razón para privar a un demandante del beneficio de la doctrina cuando el demandante es un empleado del demandado deja de existir. Aquellos casos en que se niega la aplicabilidad de la doctrina en una acción seguida por un empleado contra su principal se fundan en la teoría de que el daño puede atribuirse a la negligencia de otro empleado, o a la negligencia contributoria del demandante con tanta razón como a la negligencia del principal. De acuerdo con la ley de responsabilidad de patronos la defensa de la doctrina relativa al co-empleado queda excluida como lo es la de negligencia contributoria hasta cierto punto. Por consiguiente, habiendo dejado de existir el motivo de la ley como ha sido expresado, la regla también deja de existir.

''En el reciente caso de *Sweeney* v. *Erving*, 228 U. S. 233, 57 L. ed. 815, 33 Sup. Ct. Rep. 416, Ann. Cas. 1914-D. 905, ya citado por nosotros, la doctrina de *res ipsa loquitur* es reconocida por la Corte Suprema de los Estados en una acción por daños y perjuicios causados a la persona, establecida por un paciente contra un médico por el uso de los rayos X, y la cuestión de negligencia contributoria podría estar envuelta en tal caso.''

*Ridge* v. *Norfolk Southern R. Co.*, es el caso ''de Estado'' mencionado en la segunda cita de la nota completa al caso

de *Midland Valley* v. *Fulgham,* en el mismo volumen, página 1, donde encontramos lo siguiente en la página 77:

"En un caso Federal que se originó por virtud de una ley de Estado sobre responsabilidad de patronos, y en un caso de Estado que se promueve de acuerdo con la ley fijando la responsabilidad de patronos se ha adoptado el criterio de que la derogación por esas leyes de la regla relativa al co-empleado y la regla en cuanto a la asunción del riesgo, hace desaparecer el motivo que hay para la distinción entre el caso de un pasajero y el de un empleado, y que la doctrina federal que rechaza la regla *res ipsa loquitur* entre principal y empleado, no es de aplicación a un caso que surge por virtud de tales leyes. Y la Corte Suprema Federal recientemente ha observado que la aplicación de la doctrina a casos que surgen por virtud de esa ley es 'controvertible' pero que no era necesario resolver la cuestión en ese caso. No parece improbable que este criterio podrá ser aceptado por las cortes federales, pues suministra un medio de eludir la doctrina que a menudo resulta fuerte e injusta contra el empleado."

Labatt, después de discutir la regla general citada por el apelado en este caso, o sea, que la negligencia no se infiere del mero hecho de ocurrir un accidente, en la página 4864, sección 1601, tomo 4 de su Tratado sobre Principal y Empleado, dice lo siguiente:

"La restricción principal a que está sujeta la doctrina que se discute en la sección anterior es la que surge de la aplicación de lo que suscintamente se denomina doctrina de *res ipsa loquitur*. El fundamento de esta doctrina es que en 'algunos casos la naturaleza misma de la acción puede por sí y por medio de la presunción que lleva consigo suplir la prueba que se requiere.' Es aplicable 'cuando según las circunstancias que se revelan, el accidente se presume que no hubiera ocurrido de haberse ejercitado debido cuidado.' Su valor esencial es que según los hechos probados el demandante ha presentado un caso *prima facie* sin prueba directa de negligencia.

"Por virtud de la aplicación de la presunción así establecida el peso de la prueba pasa al demandado, quedando en él hasta que haya presentado alguna prueba que tienda a establecer que está libre de culpa. Sin embargo, el peso de la prueba que en él recae, no es el de explicar satisfactoriamente el accidente, sino meramente el probar que empleó debido cuidado.

"La doctrina no prescinde de la regla de que la parte que alega negligencia debe probarla.  Meramente determina la forma de probarla, o lo que ha de ser *prima facie* prueba de negligencia.

"(En un gran número de casos, especialmente de las cortes federales, el lenguaje empleado no admite otra interpretación que no sea la de que la corte sostiene que la máxima nunca tiene aplicación en un caso entre el principal y empleado.  No se da ninguna razón satisfactoria de por qué la máxima no debe aplicarse en tales casos, aunque su aplicación se restringe en cierto modo debido a las reglas subsidiarias que regulan tal relación.)"

Y en un número considerable de casos federales las cortes han mostrado una fuerte disposición a hacer caso omiso o restringir la regla que se sugiere en lo que de paso expresa la Corte Suprema en el caso de Patton.

En el caso *Farmers Loan & Trust Co.* v. *Toledo A. A. and N. M. Railroad Company,* 67 Fed. 73, en el cual "la muerte del maquinista y fogonero se ocasionaron por el descarrilamiento y vuelco de la máquina," se resolvió que—

"El hecho de que el accidente ocurriera por descarrilamiento del tren, o lo que quizás es lo mismo que un descarrilamiento por un derrumbe y el aflojamiento del cimiento del camino, establece un caso *prima facie* de negligencia que el depositario está en el deber de destruir mediante prueba.  *, *   *"

En el caso de *Byers* v. *Carnegie Steel Company,* 159 Fed. 347, la Corte de Circuito de Apelaciones, Sexto Circuito, después de indicar que la regla establecida en el caso de Patton se funda en "el contrato en particular del empleado por el cual asume los riesgos incidentales a su empleo, incluyendo la negligencia de sus compañeros de empleo (*fellow servants*) y el requisito que surge como consecuencia de que el empleado lesionado demuestre que la lesión de que se queja fué la consecuencia del riesgo que no asumió," agrega que—

" *   *   * no hay regla inflexible de que la doctrina de *res ipsa loquitur* no puede de modo alguno ser aplicada a un caso seguido por un empleado contra un principal por una lesión negligente.  Por el contrario, la regla referida ha sido aplicada en numerosos casos de esa

naturaleza, estando determinada la aplicación de la regla por las circunstancias bajo las cuales el accidente se demuestra que tuvo lugar.''

Y un número de casos de Estados se citan entonces con aprobación para explicar la proposición citada últimamente.

Hacemos la siguiente cita de la opinión en el caso de *Lucid* v. *Du Pont de Nemours Powder Company*, 199 Fed. 377:

"Se alega que por la relación de hechos alegados en la demanda surge una causa de acción a favor del demandante en error y una presunción de negligencia por parte del demandado en error o, en otras palabras, que el hecho habla por sí (*res ipsa loquitur*). La doctrina ·de *res ipsa loquitur* envuelve una excepción a la regla general de que debe probarse afirmativamente la negligencia y que no ha de inferirse, y la doctrina ha de aplicarse solamente cuando la naturaleza del accidente mismo no solamente sostiene la inferencia de la negligencia del demandado sino que excluye todas las demás.

"La regla general es que en acciones establecidas por empleados contra sus patronos por lesiones causadas por negligencia, el mero hecho de la lesión no crea presunción ninguna de negligencia por parte del principal y que la doctrina de *res. ipsa loquitur* no es de aplicación. *Chicago & N. W. Ry. Co.* v. *O'Brien,* 132 Fed. 593, 67 C. C. A. 421; *Northern Pac. Ry. Co.* v. *Dixon,* 139 Fed. 737, 71 C. C. A. 555; *Shandrow* v. *Chicago St. P. M. & O. Ry. Co.,* 142 Fed. 320, 73 C. C. A. 430; *Omaha Packing Co.* v. *Sanduski,* 155 Fed. 897, 84 C. C. A. 89, 19 L. R. A. (N. S.) 355; *Patton* v. *Illinois Cent. R. Co.* (C. C.) 179 Fed. 530; *Midland Valley R. Co.* v. *Fulgham,* 181 Fed. 91, 104 C. C. A. 151; *Montbriand* v. *Chicago, St. P. M. & O. Ry. Co.,* (C. C.) 191 Fed. 988. La razón de la regla es que generalmente puede saberse con certeza razonable que la lesión no se ocasionó por la negligencia de ningún otro empleado, o que no resultó del riesgo del empleo que el empleado asumió, incluyendo el de la negligencia de sus compañeros de empleo (*fellow servants*). En el caso de *Patton* v. *Pac. Ry. Co.,* 179 U. S. 658, 21 Sup. Ct. 275, 45 L. Ed. 361, la corte dijo lo siguiente:

" 'Cuando la prueba deja incierta la cuestión y muestra que cualquiera de media docena de cosas han podido dar lugar a lesión, por algunas de las cuales el patrono es responsable y por otras no lo es, no incumbe al jurado adivinar entre estas media docena de causas y declarar que la negligencia del patrono fué la verdadera causa,

cuando no hay una base satisfactoria en la prueba para esa con-
clusión.'

"Pero la regla no es inexorable y hay casos en los cuales la má-
xima *res ipsa loquitur* debe resolverse que es de aplicación aun a ac-
ciones establecidas por empleados contra sus patronos. Tal caso fué
reconocido por la Corte de Circuito de Apelaciones del Sexto Circuito
en el caso de *Byers* v. *Carnegie Steel Co.*, 159 Fed. 347, 86 C. C. A.
347, 16 L. R. A. (N. S.) 214, en el cual se resolvió que cuando la
naturaleza del accidente y las circunstancias bajo las cuales tuvo
lugar son tales que indican decididamente una condición anormal y
peligrosa de la maquinaria y su larga y continuada existencia bajo
circunstancias que indicaban que el patrono ejercitando cuidado razo-
nable debió haber conocido tal condición y que el empleado no asumió
ningún riesgo por ello, la relación de patrono y empleado no prohibe
la inferencia de la negligencia del patrono en vista del hecho del
accidente.

"En el caso de *Westland* v. *Gold Coin Mines Co.*, 101 Fed. 59,
41 C. C. A. 193 el demandante había construído un aparato protector
para el uso de sus empleados en una estrecha y oscura grieta de una
mina, 900 pies bajo la superficie de la tierra, sabiendo que sería car-
gada de cuando en cuando con toneladas de tierra y de roca, pero
que el aparato protector era de insuficiente resistencia o había sido
indebidamente construído, y se derrumbó causando la muerte del
causante del demandante. El Juez Thayer, al emitir la opinión del
tribunal, dijo lo siguiente:

" 'El hecho de que el aparato protector se cayera demuestra que
era deficiente para sostener la carga que se le puso cuando se cayó.
El caso que consideramos, pues, no es de la clase en que puede decirse
que el hecho de ocurrir el accidente no suministrara prueba alguna
de negligencia.'

\*        \*        \*        \*        \*        \*        \*

"La parte sustancial de la demanda donde se imputa negligencia
en el presente caso es que el demandado negligente y descuidamente
tenía y guardaba almacenada en el edificio en donde estaba dedicado
a la manufactura de dinamita, una gran cantidad de dinamita y de
otros explosivos peligrosos, aproximadamente 30,000 libras. De la
misma naturaleza de las alegaciones, la asunción de que la negligencia
ha podido ser el acto de otro empleado queda excluída, y parece por
tanto que la máxima *'res ipsa loquitur'* debe ser de aplicación; pues
la defensa de la asunción del riesgo es una que de acuerdo con la

práctica en California debe alegarse por el demandado.'' *Magee* v. *North Pac. C. R. Co.,* 78 Cal. 430, 21 Pac. 114, 12 A. S. R. 69.

En el caso *American Car & Foundry Company* v. *Schachlewich,* 229 Fed. 559, el penúltimo párrafo de la opinión dice lo siguiente:

"La única cuestión envuelta es si la corte cometió error al negar un veredicto dictado a favor del demandado como fué solicitado. Es la ley establecida de las cortes de los Estados Unidos que para hacer responsable a un principal por lesiones causadas a un empleado, el empleado debe probar por prueba satisfactoria que el principal fué negligente en la forma alegada en la demanda y que tal negligencia fué la causa de la lesión. La máxima de *res ipsa loquitur* no es de aplicación cuando existe la relación de principal y empleado. *Patton* v. *Texas & Pacific R. R. Co.,* 179 U. S. 658, 21 Sup. Ct. 275, 45 L. Ed. 361; L. Ed. 564; *American Car & Foundry Company* v. *Dieta,* 121 C. C. A. 593, 203 Fed. 469. Según el criterio del que firma esta opinión, todo lo que pueda decirse en favor de esta regla es que tiene la sanción del tiempo y la regla de *stare decisis* no permite a las cortes desatenderla. El departamento legislativo del gobierno únicamente puede cambiar la regla."

Y la Corte Suprema de los Estados Unidos en el caso de *Minn. & St. Louis Railroad Company* v. *Gobzchall,* 244 U. S. 66, al sostener que en vista de la Ley de Aparatos de Seguridad (*Safety Applicance Act*) puede inferirse negligencia de la mera separación de las uniones de un tren que lleva artículos de comercio entre Estados y que produce como consecuencia la muerte del guardafrenos, se refiere a la doctrina de *Patton* v. *Texas & Pacific Ry. Co., supra,* y *Looney* v. *Metropolitan Railroad Company,* 200 U. S. 480 como regla "al efecto de que la negligencia no puede inferirse de la mera ocurrencia de un accidente excepto bajo las circunstancias más excepcionales." Esta interpretación del caso de Patton parece estar algo en harmonía con la sugerida en los casos de Lucid y Byers a la luz de la cita comprendida en lo arriba transcrito del caso de Lucid, que también se copia al pie de la

letra en el de Byers, y al cual frecuentemente se hace referencia en otras decisiones.

Véase también el caso de *Standard Oil Company* v. *Brown*, 218 U. S. 78 y casos citados.

Pero aparte de cualquier metamorfosis problemática de la regla en las Cortes Federales, y sin tener en cuenta el efecto cualquiera que pueda ser de las decisiones federales en jurisdicciones donde prevalece la doctrina del co-empleado, difícilmente pueden ser consideradas como obligatorias para las cortes de esta Isla donde este decadente aunque relativamente moderno derecho de la Ley Común es desconocido y donde tanto el derecho de acción como la responsabilidad son de origen estatutorio. No tememos la suerte de Escocia donde la doctrina de empleo común "no fué tan adoptada de Inglaterra como introducida en las cortes de Escocia por las decisiones de la Cámara de los Lores" con el resultado de que en una jurisdicción "en la cual la Ley Civil suministra en gran modo la base de la jurisprudencia administrada se aplica ahora una doctrina que ha sido repudiada en todos los demás países en los cuales ese sistema prevalece." 5 Labatt, 6155, sección 1991.

La importante nota al caso de *Midland Valley R. Co.* v. *Fulgham, supra,* después de indicar la necesidad de cautela en aceptar el resultado en un solo caso como autoridad para el criterio de que la regla en su sentido estricto y terminante jamás tiene aplicación entre principal y empleado, dice lo siguiente:

"Si sólo hubieran de considerarse las declaraciones generales de las opiniones, el peso de las autoridades tal vez sostendría ese criterio y como !ya se ha indicado, existen muchas autoridades en su apoyo aun cuando las declaraciones generales en casos particulares se comprueban por los resultados y por comparación con los otros casos de la jurisdicción. Sin embargo, un examen de todo el número de casos sobre la materia parece confirmar la conclusión expresada en la nota en el Tomo 6, L. R. A. (N. S.) p. 302, de que la relación de principal y empleado no es necesariamente fatal para la aplicación

de la regla, aunque la regla tiene un alcance mucho mas restringido entre partes en esa relación que entre el portador y el pasajero, por lo menos en casos sujetos a los principios de derecho sustantivo comprendidos en la regla relativa a compañeros de empleo y la regla respecto a la asunción del riesgo. La derogación estatutoria de esas reglas quita uno de los principales sostenes de la doctrina de que la relación de principal y empleado es necesariamente fatal a la regla, y amplía el alcance de la regla en aquellas jurisdicciones que sostienen un criterio opuesto.''

Hacemos la siguiente cita de la sección 9 de la misma nota en donde se discute la aplicación de la regla de otro aviso del defecto en la página 59, a saber:

''En la Ley Común y de acuerdo con muchos estatutos el principal no es responsable por una lesión a un empleado como consecuencia de un defecto en un sitio o aparato a menos que él supiera, o en el ejercicio de cuidado ordinario lo hubiera sabido, y como cuestión de derecho sustantivo se sostiene o presume generalmente que tal conocimiento es parte del caso del demandante más bien que esa falta de negligencia es una defensa afirmativa. Este criterio, sin embargo, no envuelve una negativa de la aplicabilidad de la regla *res ipsa loquitur* al elemento de conocimiento o aviso, sino que, por el contrario, de lugar a la ocasión y necesidad de invocar la regla sobre este aspecto del caso.

''En muchos casos la dificultad que tiene el demandante no es de hacer una demostración *prima facie* de un defecto en el lugar o aparato, sino en demostrar que el principal sabía o debía haber conocido el defecto. Verdaderamente la prueba de que el aparato se rompió mientras se usaba por el empleado con el debido cuidado para el fin a que generalmente se destinaba, presenta un caso *prima facie,* si no conclusivo en tanto se trata de la existencia del defecto o de la impropiedad del aparato. Basado en la hipótesis que comprende el uso debido del aparato no parece necesaria invocar la regla *res ipsa loquitur* en un sentido terminante para establecer la existencia de un defecto, aun cuando el caso esté desprovisto de todas las demás circunstancias tendentes a indicar su existencia. * * *

''Las cortes convienen en que el aviso directo o indirecto, puede probarse por las circunstancias, pero no pocas veces se pronuncian en contra del empleado por el fundamento de que si bien las circunstancias son suficientes para establecer *prima facie* la existencia de

un defecto en un lugar, aparato o instrumento, no hay prueba directa o circunstancial que tenga ninguna tendencia a demostrar que el principal conocía, o en el ejercicio de un cuidado razonable hubiera conocido el defecto a tiempo para haberlo remediado, sin prestar debida consideración a la cuestión invocando la regla *res ipsa loquitur* en su sentido estricto y terminante, esto es, como una regla que por el mero hecho del accidente y su causa o causas físicas, sin otra cosa, permita la presunción o inferencia de negligencia incluyendo ambos de sus elementos, o sea, la existencia del defecto y el conocimiento del principal, o la oportunidad de haber conocido el defecto.

✻    ✻    ✻    ✻    ✻    ✻    ✻

"Es verdad que aunque la experiencia enseña que los defectos del carácter en cuestión pueden generalmente evitarse mediante el ejercicio de un debido cuidado por parte del principal, las circunstancias del caso en particular pueden demostrar que el defecto en particular en cuestión no pudo haber sido evitado o advertido por el ejercicio de tal cuidado; o la prueba afirmativa en cuanto al cuidado empleado para impedir o advertir los defectos puede concluyentemente rechazar cualquier presunción o inferencia de negligencia, impidiendo así la aplicación de la regla. Sin embargo, a pesar de estas posibles razones por las cuales no debe invocarse la doctrina de *res ipsa loquitur* en un caso particular para suplir la falta de circunstancias tendentes a indicar que el defecto pudo haber sido advertido mediante el ejercicio de debido cuidado por parte del principal, la corte no debe desestimar la petición del demandante debido a la falta de tales circunstancias bajo la impresión de que la prueba directa o circunstancial para probar el aviso u oportunidad de conocer el defecto en una condición necesaria de la regla *res ipsa loquitur,* puesto que la falta de tal prueba no solamente no destruye la regla sino que establece la verdadera necesidad y ocasión de invocarla."

Examinando ahora la nota del caso *Fitzgerald* v. *Southern R. Co., supra,* 6 L. R. A. (N. S.) en la página 356, se dice:

"Quizás la ampliación más clara de la naturaleza y función de la regla *res ipsa loquitur* y su aplicabilidad entre principal y empleado puede encontrarse en la opinión del caso *Chenall* v. *Palmer Brick Co.,* 117 Ga. 106, 43 S. E. 443, y la opinión por virtud de la siguiente apelación en el mismo caso (119 Ga. 837, 47 S. E. 329). La acción en ese caso fué establecida por un empleado contra el principal por la caída de un arco de ladrillo que había sido construído por este último."

En la primera apelación en el caso de Chenall el Juez Lamar, hablando a nombre de la corte, dijo lo siguiente:

"Hay una disposición a argumentar que toda lesión es el resultado de la negligencia de alguno, pero en muchos casos la lesión es un mero accidente o casualidad de la cual humanamente hablando nadie puede ser censurado. En otros, la persona lesionada tiene culpa; en algunos su negligencia contribuye al accidente; en otros un compañero. En todos esos casos la máxima *res ipsa loquitur* suministra poca o ninguna ayuda al jurado; pues aún suponiendo que la lesión misma denota negligencia nada dice respecto a quien fué negligente y no determina base alguna para resolver si el demandante, el demandado, un empleado, o algún particular no ha sido culpable. Hay otros casos en los cuales cuando se demuestra que el demandado poseía o tenía dominio sobre la cosa, la cual, de estar debidamente construída, conservada o manejada en el curso ordinario de los sucesos no funcionaba de modo que pudiera perjudicar a aquéllos que se encontraban a su alrededor, la prueba de que se causó por tal cosa proporciona prueba razonable de que la lesión fué ocasionada por falta de cuidado ordinario. *Prima facie,* esa falta de debido cuidado debe atribuirse a aquél bajo cuyo manejo y control el instrumento que ocasionó la lesión se encontraba. El jurado no estaría justificado en su razonamiento en una forma estrictamente lógica: 'Los edificios no se derrumban sin negligencia; este edificio se derrumbó; por tanto hubo negligencia;' pues los edificios se caen sin que nadie sea culpable, y como resultado de una inundación y tormenta. Pero generalmente las causas extraordinarias y externas deben considerarse como la excepción que ha de ser establecida por el demandado. Todo lo que se exigiría que el demandante hiciera en el primer caso, es demostrar que el demandado era dueño, funcionaba y tenía o controlaba la cosa y era responsable del manejo y sostenimiento de la cosa que ocasionó el daño; que el accidente era de tal naturaleza que a falta de prueba de alguna causa externa no ocurre generalmente sin negligencia. Cuando ha probado esto él ha echado el peso de la prueba al demandado, quién entonces puede proceder a demostrar que el accidente se ocasionó por fuerza mayor (vis major), o por otras causas de las cuales no era responsable.

"Es cosa más bien extraordinaria, que en la multitud de casos sobre lesiones personales resueltos por esta corte en ninguno de ellos se ha invocado directamente la máxima *res ipsa loquitur*. *Yonge* v. *Kinney,* 28 Ga. 111. Sin embargo, está tan bien fundado en la razón

y tan sostenido por las autoridades que no es necesario hacer citas completas. La exposición más adecuada y concisa del principio se encuentra en el caso principal de *Scott* v. *London & St. Katherine Docks Co.,* 3 Hurl & C. 596, en el cual el demandante recibió lesiones por la caída de sacos de azúcar que se bajaban del almacén del demandado, y la corte declaró lo siguiente: 'Debe haber prueba razonable de negligencia; pero cuando se demuestra que la cosa está bajo el manejo del demandado o de sus empleados y el accidente es tal que en el curso ordinario de las cosas no tiene lugar si aquellas personas que tienen el manejo emplean el debido cuidado, suministra prueba razonable a falta de explicación por el demandado, de que el accidente se originó por falta de cuidado.' Un caso que es algo más aplicable es el de *Waterhouse* v. *Brewing Company,* 48 L. R. A. 157 (*a*), 159, en el cual el edificio había permanecido en pie por diez años y el demandado insistió en que ese hecho contradijo la alegación de que el edificio había sido construído negligentemente. La corte, sin embargo, dijo: 'Considerado el hecho de que el edificio se cayó por su propio peso sin ninguna violencia externa, sería una presunción razonable que su caída se debió a causas adecuadas, una de las más naturales sería la negligencia y construcción defectuosa del edificio mismo.' Aunque el principal no era un garantizador, estaba, sin embargo, obligado a ejercitar debido cuidado en suministrar al empleado un sitio seguro en donde hacer el trabajo (*Preston* v. *Central R. Co.,* 84 Ga. 590), y no podía eludir su obligación encargando de tal obligación a un empleado. *Southern Baucits Co.* v. *Fuller,* 116 Ga. 695.''

Y al volver el caso por segunda vez, la Corte de Georgia, por medio del Juez, Sr. Cobb, con la misma claridad volvió a expresar este criterio de la cuestión en los siguientes términos:

''Cuando el caso estuvo aquí antes hubo una resolución terminante en el sentido de que la máxima *res ipsa loquitur* sería aplicable a una acción seguida por un empleado contra un principal. Aunque concebimos que esta es una proposición respecto a la cual las cortes de ningún modo están de acuerdo y las resoluciones más antiguas generalmente son en sentido contrario, sin embargo hay muchas decisiones de cortes americanas que resuelven que, bajo determinadas circunstancias, esta máxima es aplicable a casos como el que se ha citado, y la tendencia de las autoridades americanas parece pronun-

ciarse ahora en ese sentido, aun cuando el curso no es en ese sentido.
Véase 2 Labat's Master & Servant, sección 834 y citación en la nota
octava.    Aunque la máxima se aplica con gran cautela en cualquier
clase de casos, mayor cautela debe ejercitarse al determinar su apli-
cación a un pleito seguido por un empleado contra el principal debido
a que el peso de la prueba incumbe al empleado lo mismo que las
presunciones que existen a favor del principal.    Un empleado que
demanda a su principal por daños y perjuicios debido a la negli-
gencia que se alega impone a él el peso de probar no solamente el
debido cuidado por su parte, sino que el principal también fué negli-
gente.    Excepto en el caso en que el principal demandado es una
compañía de ferrocarriles, el empleado no puede bajo ninguna cir-
cunstancia invocar en su contra ninguna presunción de ley que tenga
el efecto de relevarle de su obligación de establecer la existencia de
la negligencia por prueba de hechos necesarios a ese objeto.    Por
otra parte el principal tiene a su favor dos presunciones de ley: la
primera, que ha cumplido con todo su deber hacia el empleado en
cuanto a los medios, lugar de trabajo y empleados; y segundo que
el empleado ha asumido todos los riesgos generales y ordinarios del
negocio.    Antes de que el empleado pueda recobrar debe destruir por
prueba de los hechos necesarios a ese objeto estas dos presunciones
que la ley supone en favor del principal.    Se exige al empleado que
pruebe la negligencia, pero él ha de llevar el peso de la prueba que
la ley le impone lo mismo que cualquier otro litigante y debe cumplir
con los requisitos de la ley, ya por prueba directa o circunstancial.
Si puede mediante prueba de una serie de circunstancias establecer
que ha ejercitado debido cuidado y que el principal fué negligente,
puede confiar en las circunstancias para recobrar aun en ausencia de
cualquier prueba directa sobre la cuestión de su propia conducta o
la de su principal.    La máxima *res ipsa loquitur* es simplemente una
regla de evidencia.    La regla general es que la negligencia nunca se
presume del mero hecho de la lesión, sin embargo, la forma en que
tiene lugar el accidente que causa el daño del cual se queja, o las
circunstancias concurrentes algunas veces pueden justificar la infe-
rencia de negligencia.    A veces se dice que justifica la presunción de
negligencia; pero la presunción a que se ha hecho referencia no es
de ley sino de hecho.    Es, sin embargo, más correcto y menos confuso
referirse a ella como inferencia más bien que presunción; y no una
inferencia que la ley deduce del hecho, sino una inferencia que el
jurado está autorizado para deducir y no una inferencia que el
jurado está obligado a establecer.    En el juicio de una acción se-

guida por un empleado contra un principal cuando se ha demostrado
que el empleado ejercitaba el debido cuidado y la forma de la lesión
o las circunstancias concurrentes son tales que la lesión no pudo
haber tenido lugar a menos que el principal hubiera sido negligente
de alguna manera en lo que la ley le exigía que fuese diligente para
la seguridad del empleado, entonces el jurado podía estar autorizado
para inferir que el principal había sido negligente en cuanto a la
materia que constituye la base de la acción y estaría autorizado para
establecer una conclusión basada en tal inferencia a falta de una
obligación que fuese satisfactoria a ellos; y no es necesario que esta
explicación le satisfaga en cuanto a la causa de la lesión, sino una
explicación que satisfaga simplemente en cuanto a que el principal
ha ejercitado toda la diligencia que la ley le exige y que será sufi-
ciente para rebatir la inferencia de negligencia que resulta del acci-
dente, aún cuando la causa de éste podía aún estar envuelta en un
misterio sin solución.

  &#42;   &#42;   &#42;   &#42;   &#42;   &#42;   &#42;

"La aplicación de la máxima *res ipsa loquitur* no cambia un ápice
de la ley de principal y empleado sino simplemente suministra en
algunos casos raros un medio de prueba al cual puede recurrir el
empleado para llevar el peso de la prueba que la ley le impone en
un caso en el cual él demanda a su principal por negligencia. En
estos casos que ocurren raras veces (pues la máxima solamente tiene
aplicación a casos que no tienen lugar ordinaria y generalmente, la
máxima proporciona al empleado una oportunidad para exigir del
jurado la inferencia de los hechos en que él ha de fundarse como
prueba de aquella que la ley exige que pruebe. La inferencia es
solamente *prima facie,* generalmente sencilla y puede ser fácilmente
destruída.''

Pasemos ahora al segundo aspecto del presente caso:

"Una proposición que ha sido frecuentemente enunciada por las
cortes como que ha venido a ser axiomática es la de que *prima facie*
un empleado no asume ningún riesgo que puede ser quitado por el
ejercicio del cuidado razonable por parte del principal. En otras
palabras, los riesgos anormales, no corrientes, o extraordinarios que
el empleado no asume como incidentales al trabajo realizado por él,
sino aquellos que no habrían existido si el principal hubiera cumplido
sus deberes contractuales." 3 Labatt, pág. 2386, sección 894.

"El grado de cuidado que se exige a un principal para proteger
a sus empleados contra una lesión es adoptar todas las medidas razo-

nables y precauciones para obtener la seguridad de sus empleados mientras se encuentran en el cumplimiento de su trabajo.   Lo que ha de ser considerado como 'debido cuidado' ha de 'estimarse por virtud de una consideración de los hechos de cada caso en particular.' Es 'aquel cuidado que los hombres razonables y prudentes emplean bajo circunstancias semejantes.'   El cuidado que. asume tal hombre para los fines de esta regla que ha de ejercitar, es aquél que ejercitaría para su propia seguridad si el medio en cuestión fué suministrado para su propio uso personal.   Esto es, se exige a un principal que suministre 'tales (aparatos) como aquellos que un hombre prudente suministraría si su vida misma estuviera expuesta a peligro y esto resultaría debido a aparatos inadecuados o inseguros.'

''En el caso de una corporación la obligación es emplear 'tal vigilancia, cautela y previsión, que bajo todas las circunstancias del servicio en particular debe ejercitar una corporación administrada por funcionarios cuidadosos y prudentes.'   *Idem,* pág. 2403, sección 908.

''La bien conocida definición que sobre negligencia da Willes, J., a saber, 'la ausencia de cuidado, según las circunstancias' es aplicable a los casos que envuelven lesiones a empleados.   El grado de cuidado, por tanto, que el principal está obligado a ejercitar se calcula por los peligros que han de advertirse o evitarse, o como se dice en otros casos 'deben ser proporcionales al carácter peligroso de los medios, instrumentos y maquinaria usada,' o, como dice la Corte Suprema de los Estados Unidos, 'el principal está obligado a observar todo el cuidado que la prudencia y las exigencias del caso requieren, en suministrar al empleado la maquinaria u otros medios debidamente seguros para el uso de este último.' ''   *Idem,* pág. 2414, sección 908.

Y la regla en las jurisdicciones de la Ley Civil es, por así decirlo, no menos favorable al empleado.

''Los dueños de establecimientos industriales están obligados a proveer todo lo necesario para la seguridad de los trabajos por ellos empleados y son responsables en cuanto a esos trabajadores de todos los accidentes y lesiones que puedan tener lugar, bien por defectos de construcción, o por no tener en la debida condición la maquinaria y aparatos, o por la negligencia o falta de habilidad de los empleados que vigilan los diferentes departamentos del negocio.''   5 Labatt, pág. 6146, sección 1968.

En el presente caso el demandante, en el cumplimiento de

su deber como empleado del demandado, se le exigía pasar
y pararse en un enrejillado de madera que había suminis-
trado y tenía el demandado para ese fin, debajo del cual ha-
bía maquinaria en movimiento.  No aparece que el deman-
dante tuviera culpa.  Si el enrejillado hubiera estado en de-
bida condición la lesión no se hubiera ocasionado.  Tanto el
enrejillado como la maquinaria estaban exclusivamente bajo
el control del demandado, quien tenía el deber de tomar pre-
cauciones razonables con relación al peligro que había a fin
de tener dicho enrejillado en la debida condición.  En el curso
ordinario y corriente de las cosas la lesión no hubiera tenido
lugar, de haberse cumplido con ese deber.  Estas circunstan-
cias levantan una inferencia de negligencia por parte del de-
mandado que este puede destruir mediante explicación acep-
table.  Por supuesto, si la causa de la lesión fué una que
no pudo haber sido prevista y evitada, la demandada no era
culpable, pero a falta de eso o de otra explicación habría
motivo bastante para sostener la conclusión de que era cul-
pable.

La anterior reseña de las circunstancias del caso no es
sino una paráfrasis en tanto no se sigue literalmente el len-
guaje empleado por la Corte Suprema de los Estados Unidos
en el caso de *San Juan Light Company* v. *Requena,* 224 U.
S. 89, en donde los hechos enumerados se consideran que jus-
tificaban la aplicación dada por nuestra Corte Federal local
a "la doctrina de *res ipsa loquitur,* que es cuando una cosa
que causa una lesión sin culpa de la persona perjudicada se
demuestra que estaba bajo el exclusivo control del demandado
y la lesión es tal que en el curso ordinario de las cosas no
tiene lugar si la persona que tiene tal control emplea el de-
bido cuidado, suministra una prueba razonable en ausencia
de explicación, de que la lesión se originó por la falta de
cuidado del demandado."

Será bastante con añadir que el caso de *Pérez* v. *Guánica
Centrale, supra,* citado por el apelado no es en manera al-

guna de aplicación, como se verá inmediatamente de una lectura de cualquiera de las dos opiniones emitidas en ese caso.

La sentencia apelada debe ser revocada, devolviéndose el caso para ulteriores procedimientos no incompatibles con esta opinión.

*Revocada la sentencia apelada y devuelto el caso para ulteriores procedimientos.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf, del Toro y Aldrey.