FAUSTO ORTIZ GINORIO y JOSEFA BIGLES ORTIZ, haciendo negocios bajo el nombre de GILLWOOD CIGAR COMPANY, demandantes y apelantes, *v.* McCORMICK STEAMSHIP COMPANY, demandada y apelada.

Núm. 8034.—*Sometido:* Mayo 9, 1940. *Resuelto:* Octubre 28, 1940.

*Enrique Igaravídez,* abogado ·de los apelantes; *Brown, González &: Newson,* abogados de la apelada.

El Juez Asociado Señor Hutchison emitió la opinión del. tribunal.

La demandante, sociedad que hace negocios bajo la razón: social de Gillwood Cigar Company, y a la que en lo sucesivo. nos referiremos con el apelativo de Gillwood, como arrenda-- taria de la planta baja de un edificio, subarrendó parte de la· misma a la McCormick Steamship Company—compañía que: de aquí ·en adelante designaremos con el nombre de McCor-- mick—para que ésta la utilizara en el almacenaje de arroz: y de otras clases de carga. En la azotea, sobre aquella parte de la planta baja de que Gillwood permaneció en posesión. existía un mirador. Para llegar a aquella parte de la azotea: que está sobre la planta baja ocupada por McCormick, era necesario atravesar dicho mirador. Durante las noches del. 14 y 15 de junio de 1937 agua de lluvia de la azotea penetró:

en la parte del edificio ocupada por McCormick y averió una cantidad considerable de arroz.

Los letrados de McCormick, en carta fechada el 22 de junio, hicieron referencia a información que decían haber sido suministrada previamente a Gillwood por McCormick el 17 del mismo mes en relación con los daños ocasionados y exigían el pago de los mismos. El letrado de Gillwood, en carta fechada el 30 de junio niega toda responsabilidad. McCormick entonces entregó 201 sacos de arroz averiados a Ignacio Lomba, quien a instancias de McCormick reacondicionó, trasegó y vendió parte del mismo. Más tarde Gillwood instó demanda ante la Corte Municipal en cobro de los cánones de arrendamiento en descubierto, y McCormick presentó contrademanda de daños y perjuicios. No hubo cuestión alguna sobre los cánones de arrendamiento ni en la corte municipal ni en la de distrito. En ambos tribunales Gillwood obtuvo sentencia por $279.19 y McCormick por $342.62 con intereses sobre la diferencia entre las dos cantidades a partir de la fecha de la radicación de la contrademanda, más las costas.

■ El primer señalamiento es que la corte de distrito erró al sostener que el fundamento de la contrademanda no es una acción redhibitoria y al sostener en su consecuencia que dicha acción no estaba prescrita a virtud de las disposiciones del artículo 1379 del Código Civil (ed. 1930). Ese artículo dispone que "las acciones que emanan de lo dispuesto en los cinco artículos precedentes se extinguirán a los seis meses, contados desde la entrega de la cosa vendida."

La posesión de McCormick bajo el contrato de subarrendamiento databa desde el 8 de marzo de 1937. La contrademanda estaba fechada el 23 de septiembre. No contiene sello de radicación. El artículo 1873 del Código Civil (ed. 1930) provee:

"Artículo 1873.—La prescripción de las acciones se interrumpe por su ejercicio ante los tribunales, por reclamación extrajudicial del acreedor y por cualquier acto de reconocimiento de la deuda por el deudor."

La carta de junio 22, supra, fué una "reclamación extrajudicial." Interrumpió el transcurso del término de seis meses. La acción no había prescrito. En su consecuencia, en lo que a la cuestión de prescripción se refiere, el error, de haberlo, al resolverse que la causa de acción alegada en la contrademanda no era una acción para rescindir el contrato de arrendamiento, no fué perjudicial.

■ Los señalamientos segundo y tercero son que la corte de distrito erró al sostener que la contrademanda se basaba en los preceptos del artículo 1446 del Código Civil y al sostener que la contrademandante alegó y probó una causa de acción suficiente.

"Son aplicables al contrato de arrendamiento las disposiciones sobre saneamiento contenidas en el título de la compraventa." Artículo 1443.

"El vendedor está obligado a la entrega y saneamiento de la cosa objeto de la venta." Artículo 1350.

A virtud de este saneamiento el vendedor responde "de los vicios o defectos ocultos que la cosa vendida tuviere." Artículo 1363. "El vendedor estará obligado al saneamiento por los defectos ocultos que tuviere la cosa vendida, si la hacen impropia para el uso a que se la destina." Artículo 1373. "El vendedor responde al comprador del saneamiento por los vicios o defectos ocultos en la cosa vendida aunque los ignorase." Artículo 1374.

En lo que a Gillwood y McCormick se refería, la posesión y dominio que el dueño tenía sobre la azotea equivalía a la posesión y dominio de Gillwood. Su saneamiento incluía la garantía de que el almacén estaba exento de defectos ocultos que pudieran hacerlo impropio para el almacenaje de arroz o de otra carga susceptible de ser averiada por los elementos.

El arrendador está obligado entre otras cosas a hacer en la propiedad arrendada "todas las reparaciones necesarias a fin de conservarla en estado de servir para el uso a que ha sido destinada." Código Civil, artículo 1444. Si no

cumpliere con tal obligación, el arrendatario, de conformidad con el artículo 1446 "podrá pedir la rescisión del contrato y la indemnización de daños y perjuicios, o sólo esto último, dejando el contrato subsistente."

De acuerdo con el artículo 1449 el arrendatario está obligado a poner en conocimiento del dueño la necesidad de todas las reparaciones requeridas a fin de conservarla en estado de servir para el fin previsto en el contrato de arrendamiento. Esta disposición presupone aquella posesión y dominio por parte del arrendatario que le permita cumplir el requisito estatutario. No impone al arrendatario de la planta baja de un edificio la obligación de notificar a su arrendador, que retiene la posesión y dominio de la azotea, de que es necesario hacer en ésta reparaciones.

McCormick alegó que la filtración se debió a defectos ocultos en la azotea, de los cuales no tenía conocimiento. Alegó igualmente que aquella parte de la azotea constituía también el piso (sic) del mirador. Éste y su piso—así como aquella parte de la azotea no ocupada por el mirador—no estaban incluídos en el contrato de arrendamiento y McCormick nunca estuvo en posesión de ellos. Como resultado de dichos defectos y como resultado de haber dejado Gillwood de mantener y conservar la propiedad arrendada en estado de servir para el uso a que se la destinaba, McCormick sufrió daños y perjuicios ascendentes a la suma de $342.62. Esas alegaciones fueron lo suficientemente amplias para que se concediera una indemnización, bien bajo la teoría de defectos ocultos existentes al tiempo de efectuarse el contrato de arrendamiento o en la teoría de que posteriormente Gillwood dejó de reparar la azotea.

De una estipulación de hechos se desprende que en diciembre de 1936 y en enero de 1937 había llovido continuamente por espacio de veinte días y el techo no se había filtrado. De ello no se colige que los defectos existentes en junio de 1937 no existían en enero de dicho año. La segunda prueba a que se le sometió puede o no haber sido más severa que la pri-

mera. Nada hay que demuestre que durante cualquiera de los días o de las noches del referido período de veinte días, la cantidad de lluvia que cayó fué igual o similar a la que cayó durante la noche del 14 de junio o durante la noche del 15 de junio. Nada hay que indique si otras condiciones, incluyendo la del desagüe, fueron o no idénticas en ambas ocasiones. Sin embargo, dado el criterio que adoptamos del caso, no es necesario que especulemos más a este respecto.

No hay duda alguna de la necesidad que había de hacer reparaciones en y antes de la época en que se descubrieron los defectos en cuestión. Estos defectos fueron fácilmente corregidos mediante la aplicación de brea en aquellos lugares en que la azotea se unía a las paredes del edificio. Nada hay en qué basar la conclusión de si los defectos, en o antes del momento de ser descubiertos, eran invisibles o conspicuos. Si existían como defectos ocultos al otorgarse el contrato de arrendamiento, Gillwood era responsable de conformidad con el saneamiento prescrito por el estatuto. De no ser así, era responsable de daños y perjuicios por haber dejado de inspeccionar y reparar la azotea en cualquier momento antes de sobrevenir la avería. Si McCormick no tenía derecho a obtener indemnización a base de la primera de las dos teorías alternativas alegadas en la contrademanda, tenía derecho a obtenerla a base de la segunda de dichas dos teorías.

El cuarto señalamiento es que la corte inferior erró al aplicar a este caso la doctrina de *res ipsa loquitur*.

La obligación de hacer todas las reparaciones necesarias, conforme hemos demostrado, correspondía a Gillwood. En lo que a él y McCormick se refería, él ocupaba exactamente la misma posición que el dueño, contra quien él tenía su propia causa de acción. No hay duda alguna de la existencia de defectos al momento de ocurrir el daño. Inmediatamente después tales defectos fueron corregidos sin dificultad alguna. No habiendo la menor prueba en contrario, la inferencia es que dichos defectos fueron obvios y que pudieron ser fácil-

mente descubiertos haciendo una inspección de la azotea tanto antes como después de la lluvia que produjo la avería. El dueño, arrendador de Gillwood, estaba en posesión y domi-nio de la azotea, y en lo que a la presente controversia con-cierne, su posesión y dominio deben considerarse como la posesión y dominio de Gillwood. En las autoridades citadas por Gillwood—*Correa* v. *Fajardo Sugar Company*, 29 D.P.R. 360, y 20 R.C.L. 185, sección 156—no hallamos nada que jus-tifique la revocación. Véase también *Torres* v. *Fernández*, 56 D.P.R. 482.

El quinto señalamiento tiene más mérito. Es al efecto de que la corte de distrito cometió error al sostener que McCormick había sido diligente en la mitigación de los daños y al decidir que Gillwood no podía quejarse de la tar-danza de McCormick a este respecto. Lomba, el perito empleado por McCormick para reacondicionar el arroz unas dos semanas después de la avería, declaró en síntesis que al llamársele para que examinara el arroz ya el daño existía, y que si se le hubieran entregado los 201 sacos un día o dos después de la avería el número de sacos perdidos se hubiera reducido de 40 a 15. Así pues, se desprende que aproxima-damente dos terceras partes por lo menos de los daños recla-mados por McCormick quizá pudieron ser evitados.

Otras cuestiones, tal cual han sido observadas en el ale-gato de la apelante, no requieren discusión separada.

*Debe modificarse la sentencia reduciendo la cuantía de los daños y perjuicios concedidos a McCormick de $342.62 con intereses sobre la diferencia entre dicha suma y el importe de los cánones de arrendamiento adeudados a Gillwood, a $140—concediéndose también las costas a Gillwood—y así modificada, confirmarse.*

El Juez Asociado Sr. Wolf disintió.*

---

* NOTA: Véase el prefacio.